*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 05a0184p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

ESTATE OF ELINOR M. JAMES, and HER HEIRS (03-6399);
STEPHEN B. GIBBS; PAULA E. GIBBS (03-6417);

                    *Plaintiffs-Appellants,*

    *v.*

UNITED STATES DEPARTMENT OF AGRICULTURE, ANN M.
VENEMAN, Secretary of Agriculture, in her Official
Capacity,

                    *Defendants-Appellees.*

Nos. 03-6399/6417

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
Nos. 01-00628; 02-00547—C. Clifford Shirley, Jr., Magistrate Judge;
Thomas W. Phillips, District Judge.

Argued: March 8, 2005

Decided and Filed: April 20, 2005

Before: MARTIN, GILMAN, and FRIEDMAN, Circuit Judges.[*]

---

## COUNSEL

**ARGUED:** John O. Threadgill, THE THREADGILL LAW FIRM, Knoxville, Tennessee, for Appellants. Elizabeth S. Tonkin, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellees. **ON BRIEF:** John O. Threadgill, THE THREADGILL LAW FIRM, Knoxville, Tennessee, for Appellants. Elizabeth S. Tonkin, ASSISTANT UNITED STATES ATTORNEY, Knoxville, Tennessee, for Appellees.

---

## OPINION

---

    FRIEDMAN, Senior Circuit Judge. These two cases, which were consolidated for oral argument, stem from a program under which the United States Department of Agriculture ("Department") reduced farmers' debts to the government that were originally secured by mortgages on their farms. The Department reduced or "wrote down" the appellants' (collectively, the "Farmers'") farm loan debts in return for the Farmers entering into shared appreciation agreements of ten years duration, under which the Farmers agreed to pay the government a part of any appreciation in the market value of their farmland. When the

---

[*] The Honorable Daniel M. Friedman, Senior Circuit Judge of the United States Court of Appeals for the Federal Circuit, sitting by designation.

agreements expired, the value of the secured farmland in each case had substantially increased. The government then sought from the Farmers a portion of the increase, and the Farmers denied any obligation to make such payment.

The Farmers contend (1) that under the shared appreciation agreements, the obligation to pay the government a part of any increase in the value of the farmland ended when the agreements expired; (2) that the government should be estopped from seeking a part of the increase because local Department officials told the Farmers that if they continued to own and farm the property for the duration of the agreements, their obligation to share such appreciation would be forgiven; and (3) that the Department's administrative proceedings, in which the Farmers unsuccessfully challenged the Department's claims, had various defects rendering those decisions arbitrary and capricious. In each case, the district court rejected the Farmers' contentions and granted summary judgment for the government. We affirm.

I

The underlying basic facts and legal issues in the two cases are substantially the same, although the dollar amounts involved are different.

A. *Estate of Elinor M. James v. United States Department of Agriculture, No. 03-6399.* In May 1989, farmer Elinor James entered into several ten-year shared appreciation agreements with the local office of the Department, resulting in a farm loan debt write-down (including accrued interest) of $179,274.92. At that time, the market value of the farmland securing the arrangement was $338,000. The agreements James signed contained language stating that she agreed to pay the Department

> Fifty (50) percent of any positive appreciation in the market value of the property securing the loan . . . between the date of this Agreement and either the expiration date of this Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security . . . .

James died during the term of the agreements, and her estate and heirs continued to operate the farm.

Shortly before the agreements expired in 1999, the Department engaged a professional appraiser who valued the James Estate secured farmland at $915,000. The land had thus appreciated by $577,000 since the agreements were executed in 1989, and 50 percent of this appreciation, as referenced by the shared appreciation agreements, totaled $288,500. Because that amount exceeded the original $179,274.92 write-down, the Department concluded that it was entitled to the latter amount. Approximately one year later, in May 2000, the Department also calculated that the James Estate owed it more than $514,000, including the $179,274.92 due under the shared appreciation agreements.

The James Estate unsuccessfully challenged the Department's ruling by invoking the Department's administrative review procedures, including an administrative hearing. The Estate then filed suit in the United States District Court for the Eastern District of Tennessee challenging the Department's decision. In a detailed opinion, the court, speaking through the magistrate judge to whom the case had been assigned for disposition, granted the government's motion for summary judgment and dismissed the complaint. *Estate of Elinor M. James v. United States Dep't of Agric.*, No. 3:01-CV-628 (E.D. Tenn. Sept. 22, 2003) (mem. op.). (The Estate also offered the Department $250,000 to settle the claim, an offer which the Department rejected. Although the Estate unsuccessfully challenged the Department's rejection of its settlement offer in district court, the Estate has not argued that point in its appeal and we therefore shall not discuss it.)

B. *Gibbs v. United States Department of Agriculture, No. 03-6417.* This case followed a similar pattern, except that there was no settlement offer. In 1991, Mr. and Mrs. Gibbs' farm loan indebtedness to the government was reduced by $160,195.50, in return for their entry into a ten-year shared appreciation

agreement, which contained the same language regarding "payment schedules" for "positive appreciation" as described for the James agreement. At that time, the Gibbs' secured farmland was valued at $96,100.

Shortly before the Gibbs' shared appreciation agreement expired, the Department had two certified professional appraisers value the secured farmland. Their appraisals resulted in a value of $265,000, reflecting an appreciation over the term of the agreement of $168,900. Because 50 percent of this appreciation totaled $84,450 and was therefore less than the write-down received by the Gibbses in 1991, the Department determined that the Gibbses owed it that lesser amount.

Like the James Estate, the Gibbses unsuccessfully challenged that decision in Departmental administrative proceedings, including an administrative hearing. The Gibbses then filed suit in the United States District Court for the Eastern District of Tennessee to overturn the Department's decision. The district court granted the government's motion for summary judgment and dismissed the action. The court "conclude[d] that 7 U.S.C. § 2001 unambiguously requires recapture of fifty percent of the appreciated value of the property securing the loan upon the expiration date of the [shared appreciation agreement], where the expiration date occurs more than four years after the date of the agreement." *Gibbs v. United States Dep't of Agric.*, No. 3:02-CV-547 (E.D. Tenn. Sept. 11, 2003) (mem.op.) at 9.

II

A. The restructuring of farm loans and the execution of shared appreciation agreements were provided for in the Agricultural Credit Act of 1987, Pub. L. No. 100-233,101 Stat. 1679 (1988) (codified as amended at 7 U.S.C. § 2001 (2002)). It directed the Secretary of Agriculture to "modify delinquent farmer program loans . . . to the maximum extent possible . . . whenever these procedures would facilitate keeping the borrower on the farm or ranch," and "to ensure that borrowers are able to continue farming or ranching operations." 7 U.S.C. § 2001(a). Section 2001(e), captioned "Shared appreciation arrangements," stated:

> As a condition of restructuring a loan in accordance with this section, the borrower of the loan may be required to enter into a shared appreciation arrangement that requires the repayment of amounts written off or set aside.

*Id.* § 2001(e)(1).

Section 2001(e) provides that the term of shared appreciation agreements shall not exceed ten years and "shall provide for recapture based on the difference between the appraised values of the real security property at the time of restructuring and at the time of recapture." *Id.* § 2001(e)(2). It further states that the "[r]ecapture shall take place at the end of the term of the agreement, or sooner — (A) on the conveyance of the real security property; (B) on the repayment of the loans; or (C) if the borrower ceases farming operations." *Id.* § 2001(e)(4). The amount of recapture is 75 percent of the appreciation if the recapture occurs within four years of restructuring and 50 percent thereafter. *Id.* § 2001(e)(3).

Written instructions that the Department gave to prospective participants in the loan restructuring program stated that, as a condition for writing down part of an existing debt, the farmer would be required to sign a shared appreciation agreement. The instructions further stated: "If you do not do one of these things [convey the real estate, stop farming, or pay off the entire debt] during the 10 years, FmHA will ask you to repay part of the debt written down at the end of the 10 years. FmHA can only ask you to repay if the value of your real estate collateral goes up." ("FmHA" refers to the Farmers Home Administration, an agency within the Department that administered farm loans.) Notice of the Availability of Loan Service Programs For Delinquent Farm Borrowers, 7 C.F.R. § 1951, Subpart S, Ex. A, Attach. 1, part II (1989).

The form of the shared appreciation agreements signed by the Farmers was prescribed by statute in Section 2001(e), and also by Department regulations in 7 C.F.R. § 1951.909 (e)(5) & (j) and § 1951.914 (1989). The agreements provided that "[a]s a condition to, and in consideration of" the Department "writing

down" the amount of debt and "restructuring the loan," the borrower "agrees to pay" the Department "an amount according to one of the following payment schedules[,]" which included the following schedule:

> Fifty (50) percent of any positive appreciation in the market value of the property securing the loan above . . . between the date of this Agreement and either the expiration date of this Agreement or the date Borrower pays the loan in full, ceases farming or transfers title of the security, if such event occurs after four (4) years but before the expiration date of this Agreement.

Since the shared appreciation agreement implements the Agricultural Credit Act of 1987 and the Department's regulations and directions thereunder, it must be interpreted "in light of the statutes and regulations authorizing the [Department] to enter into such agreements." *Stahl v. United States Dep't. of Agric.,* 327 F.3d 697, 701 (8th Cir. 2003)*; see also Pauly v. United States Dep't of Agric.*, 348 F.3d 1143, 1149 (9th Cir. 2003) (per curiam); *Israel v. United States Dep't of Agric.*, 282 F.3d 521, 527 (7th Cir. 2002).

Like the three other circuits that have decided the issue, we conclude that the shared appreciation agreements unambiguously authorize the government to recover its share of the increased value of the secured farm property after the agreements have expired. We also conclude that the government may so recover even though none of the three events (property conveyance, cessation of farming, or debt payoff) that trigger recapture during the ten-year term of the agreement have occurred. *See Pauly*, 348 F.3d at 1149; *Stahl*, 327 F.3d at 702; *Israel*, 282 F.3d at 527.

The arrangement between the Farmers and the Department involved a bargain under which, in return for the Department's substantial write-down of the Farmers' indebtedness, the Farmers agreed to give the government half of any increase in the value of the farms during the ten-year term of the shared appreciation agreements or, if during that time they conveyed their farms, repaid their loans, or ceased farming, half the amount of the increase to the date of such action. (The arrangements also provided, and the Farmers also agreed, that if the Farmers did one of the three triggering acts within four years of the initial agreement date or the agreements otherwise expired during that time, then the government would be entitled to receive an even larger percentage of any increase in farm land value.) The standard provision of the agreements that deals with the Farmers' obligation to pay the Department 50 percent of the farm property's appreciation unambiguously states that if the Farmers do not do any of the three triggering acts, they will pay half of any increase in the market value of the property, as calculated between the agreement's initial signing date and its expiration date, on the expiration date of the agreement. Read in light of the legislative and regulatory background, nothing in the agreement language even suggests, much less states, that the Farmers' obligations to share any increase in their farms' value with the Department expired upon the expiration of the agreements themselves. To the contrary, it was the agreements' expiration that triggered the Farmers' obligations to make such payments.

> As the Ninth Circuit stated in *Pauly*, in language equally applicable to the present case:

> The SAA [shared appreciation agreement] requires the Paulys to pay a percentage of any appreciation "between the date of this Agreement and *either* the expiration date of this Agreement *or* the date Borrower pays the loan in full, ceases farming or transfers title of the security . . ." (emphasis added). This language is not ambiguous. The Paulys are obliged to pay a portion of the appreciation upon expiration of the SAA if no other triggering event has occurred prior to expiration.

*Pauly*, 348 F.3d at 1149.

Similarly, nothing in the agreements supports the Farmers' contention that they are obligated to make such payment only if, during the term of the agreement, they pay the loan, cease farming, or transfer title to the farm. That argument ignores the critical language in the agreements that obligated them to pay

back half the increase in value between the date of the agreement and "either the expiration date of this Agreement or the date" they do one of these three acts.

B.  The Farmers contend, however, that the government should be estopped from seeking its share of the increase in value because, when they entered into the shared appreciation agreements, the local Department officials with whom they dealt allegedly told them that if they continued to farm the property for the ten-year term of the agreements, they would not have to pay the government any part of the increased value.  In its briefs, the Department recognized that "one or more of its employees may have communicated misrepresentations of the effect of the then newly-enacted statutory scheme involving the shared appreciation agreements." (*Estate of James*, Appellee's Br. at 33; *Gibbs*, Appellee's Br. at 25).

"[I]t is well settled that the Government may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60 (1984).  As this court has stated, "[a]t the very minimum, some affirmative misconduct by a government agent is required as a basis of estoppel." *Fisher v. Peters*, 249 F.3d 433, 444 (6th Cir. 2001) (quoting *United States v. Guy*, 978 F.2d 934, 937 (6th Cir. 1992)).  "[A]ffirmative misconduct is more than mere negligence.  It is an act by the government that either intentionally or recklessly misleads the claimant." *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (internal quotation marks omitted); *see Pauly*, 348 F.3d at 1150 (stating that mere error or negligence by the government official is insufficient to "satisfy the 'affirmative misconduct' requirement").

The Farmers have not shown that the Department officials committed any affirmative misconduct in erroneously telling the Farmers that if they continued to operate their farms for ten years, they would not have to share any appreciation with the government.  In rejecting a virtually identical claim of government estoppel, the Ninth Circuit stated in *Pauly* that "[t]he Paulys have not demonstrated affirmative government misconduct.  They allege that they were misinformed about the terms of the SAA [shared appreciation agreement], but offer no evidence that the alleged misrepresentation was deliberate or fraudulent.  They do not attempt to demonstrate that [the Department official who allegedly gave misinformation] was aware of the correct terms of SAA, let alone that he deliberately misled them." 348 F.3d at 1149.  The Farmers in this case, like the Paulys, have shown only that the local Department officials' misrepresentations to them were either inadvertent or, at worst, negligent.

The Farmers also rely upon those local Department officials' statements to support their contention that, under the shared appreciation agreements, they were not obligated to share the increase in property value with the government if they continued to operate the farms for the agreements' ten-year terms.  In part II.A above we have rejected that interpretation of the agreement, ruling that the agreements unambiguously require such payment after the ten-year term.  Because the agreements implement the underlying statute, the local Department officials had no authority to depart from the provisions Congress prescribed. *See Pauly*, 348 F.3d at 1150 (local Department agents "cannot bind the government beyond the scope of the statute granting them authority"); *Stahl*, 327 F.3d at 702 (where "representations made by [local Department officials] suggest that no recapture is due at the end of the term, the mandatory provisions of the statute control.").

The Farmers also failed to show another necessary element of an estoppel claim against the government, namely that the person invoking the doctrine reasonably relied on the misrepresentation to his detriment. *See Mich. Express*, 374 F.3d at 427 (citing *LaBonte v. United States*, 233 F.3d 1049, 1053 (7th Cir. 2000)).  The Farmers do not contend that had it not been for the local officials' statements, they would not have entered into the debt write-down program and the shared appreciation arrangements.  In fact, those arrangements substantially benefitted the Farmers and put them in a better position than they otherwise would have achieved.  Not only did they avoid what appeared to be an imminent foreclosure of the mortgages on their farms, but they also received what amounted to ten-year interest-free government loans and gained at least half of the increase in market value of the farm land that occurred during the ten-year agreement terms.  In fact, the James Estate actually gained more than half of its farm's increase in market value, because the Department is only seeking to recover the original amount of the debt write-down, which

amounts to less than half of the shared appreciation. The Gibbses, who originally owed $160,195.50, have likewise received an additional benefit of $75,745 because the Department now seeks to recover only $84,450 from them.

### III

The Farmers present a plethora of objections to the Department's administrative proceedings, and characterize the Department's decisions rendered in those proceedings as arbitrary and capricious. More specifically, the Farmers' contentions include allegations that the evidence does not support the decisions, that the Department failed to consider all relevant facts and circumstances, and that the Department failed to follow governing procedural guidelines and by its misdeeds denied them due process and equal protection.

After reviewing these contentions, we conclude that they do not require further discussion. Some of them are merely repetitive of the arguments we have discussed and rejected in part II above. The remainder are simply unpersuasive.

### CONCLUSION

The judgments of the district court in each case granting summary judgment for the government and dismissing the complaint are affirmed.