*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0313p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

JAWDAT ELIA,

*Petitioner,*

*v.*

No. 03-3446

ALBERTO GONZALES, Attorney General,

*Respondent.*

---

On Petition for Review of a Final Order
of the Board of Immigration Appeals.
No. A35 087 043.

Argued: May 11, 2005

Decided and Filed: July 22, 2005

Before: SILER and ROGERS, Circuit Judges; REEVES, District Judge.[*]

---

### COUNSEL

**ARGUED:** Marisa Petrella, PETRELLA & ASSOCIATES, Southfield, Michigan, for Petitioner. James A. Hunolt, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent. **ON BRIEF:** Marisa Petrella, PETRELLA & ASSOCIATES, Southfield, Michigan, for Petitioner. Margaret J. Perry, Jennifer L. Lightbody, UNITED STATES DEPARTMENT OF JUSTICE, OFFICE OF IMMIGRATION LITIGATION, Washington, D.C., for Respondent.

---

### OPINION

---

ROGERS, Circuit Judge. Jawdat Elia petitions for review of an order of the Board of Immigration Appeals ordering Elia deported to Iraq. In 1991, while a lawful permanent resident of the United States, Elia was convicted in Michigan of a drug-related offense. After the Immigration and Naturalization Service ("INS") initiated deportation proceedings against Elia on the basis of this conviction, Elia petitioned for a waiver of deportability under the former § 212(c) of the Immigration and Nationality Act , 8 U.S.C. § 1182(c). Ultimately, an Immigration Judge ("IJ") found that Elia was statutorily ineligible for the waiver because he had served a sentence of at least five years for the commission of an aggravated felony. The Board of Immigration Appeals ("BIA")

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

1

summarily affirmed.  In petitioning for review, Elia does not dispute that he was convicted of an aggravated felony.  Further, he conceded at oral argument that he in fact served a five-year term of imprisonment.  Instead, Elia challenges his order of removal by arguing on constitutional and equitable grounds that the IJ improperly found him ineligible for § 212(c) relief.  These challenges lack merit; therefore, we deny the petition for review.

On April 2, 1991, Elia pled guilty to possessing a controlled substance, in violation of Michigan Compiled Laws § 333.7403(2)(a)(iii).[1]  Although that offense carried a minimum sentence of five years, the trial court sentenced Elia to a term of two to twenty years in prison.  Sentencing occurred on June 28, 1991.  The trial court gave Elia two days' jail credit toward his sentence.  An information sheet from the Michigan Department of Corrections ("MDOC") indicates that Elia's "corrected date" of sentence is therefore June 26, 1991.

In November 1991, while Elia was serving his sentence, the INS issued a detainer requesting that the MDOC notify the INS thirty days before Elia's release from prison in order for Elia to be transferred to INS custody.  On December 26, 1991, the INS served Elia with an Order to Show Cause and Notice of Hearing ("OSC").  The OSC charged Elia with deportability under Immigration and Nationality Act ("INA") §§ 241(a)(2)(A)(iii) (an aggravated felony) and 241(a)(2)(B)(i) (controlled substance violation).  Elia was deportable based on his April 1991 drug conviction.  Elia alleges that he orally requested § 212(c) relief when he met with an INS officer earlier in December 1991; however, nothing in the record supports this claim.  Petitioner's Br. at 7.

The prosecutor appealed the sentence in Elia's case; on September 30, 1992, the Michigan Court of Appeals held that the trial court did not have discretion to deviate downward from the statutory minimum sentence of five years.  Therefore, on March 9, 1993, Elia was resentenced to a term of five to twenty years' imprisonment, rather than two to twenty years. An MDOC document entitled "Custody Release" confirms that Elia completed his prison term and was released on parole, and entered INS custody, on October 1, 1996.[2]

Elia sought to have his two-to-twenty-year sentence reinstated; he succeeded in this effort only after his prison term was finished.  The Michigan Supreme Court held in *People v. Fields,* 528 N.W.2d 176 (Mich. 1995), that discretionary sentencing below the statutory minimum is permissible in some circumstances.  The Government notes that based on *Fields*, Elia petitioned a Michigan trial court to reinstate his original sentence.  Respondent's Br. at 4.  (The Joint Appendix contains the document reflecting Elia's restored sentence, but it does not contain his petition.)  The trial court reinstated the sentence on April 18, 1997, after the completion of Elia's prison term.

On October 25, 1996, Elia appeared before an IJ and formally requested § 212(c) relief.  The IJ found that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") eliminated § 212(c) relief for any alien convicted of an aggravated felony; further, the IJ found, this provision

---

[1] The Michigan Court of Appeals subsequently found that Elia had actually pled guilty to delivery of a controlled substance, Mich. Comp. Laws § 333.7401(2)(a)(iii).  The Michigan Court of Appeals ordered the trial court to amend the judgment to reflect this.

[2] Initially, Elia disputed on appeal that he had served a greater-than-five-year prison sentence.  On May 24, 1996, the MDOC listed Elia's projected parole date as June 25, 1996.  In his brief, Elia relied on the projected date to argue that since he was sentenced on June 28, 1991, his term of imprisonment lasted three days short of five years.  However, the MDOC "Custody Release" document establishes that Elia was released on parole on October 1, 1996.  When a Michigan trial court reinstated Elia's two-to-twenty-year sentence on April 18, 1997, it gave Elia credit for 1922 days, or 5 years and 97 days, toward his sentence. A sentence of June 25, 1991, to October 1, 1996, would encompass this number of days.  Substantial evidence supports the IJ's conclusion that Elia served a sentence of this length.  At oral argument, counsel for Elia conceded that Elia had served a five-year term.

applied retroactively to convictions before AEDPA's effective date. The BIA affirmed on July 23, 1997.

Subsequently, Elia moved to reopen his case, arguing in part that AEDPA should not apply retroactively to bar § 212(c) relief for aggravated felons. The BIA reopened the case, because this court's decision in *Pak v. Reno*, 196 F.3d 666 (6th Cir. 1999), prohibited retroactive application of this AEDPA provision. On October 17, 2001, the IJ, on remand, determined that Elia was nonetheless ineligible for § 212(c) relief, because he had served a term of at least five years in prison. The IJ found that Elia "was, in fact, paroled from [MDOC] custody on October 1, 1996 and was released on that date . . . ." Noting Elia's argument that he actually was released from custody on his projected parole date—June 25, 1996—the IJ found that even accepting this version of the facts, Elia had still served five years in prison, because Elia had received two days' jail credit when he was sentenced on June 26, 1991. The BIA affirmed without an opinion on February 25, 2003. This petition for review followed.

Because Elia is deportable by reason of his conviction for an aggravated felony, this court has jurisdiction to review only questions of law Elia raises in petitioning for review of his order of deportation. *See* 8 U.S.C. § 1252(a)(2)(D) (2001), *amended by* REAL ID Act § 106(a)(1)(A)(iii), Pub. L. No. 109-13, Div. B, 119 Stat. 231, 310 (2005). Recent changes in the law benefit Elia: the REAL ID Act both places Elia's petition for review of his *deportation* order under the set of judicial review rules applicable to *removal* cases, and also expands this court's direct review of removal orders. Nonetheless, because Elia argues no persuasive legal ground for vacating his deportation order, we deny the petition for review.

Where, as here, the BIA summarily affirms an IJ's order of deportation, this court directly reviews the IJ's decision. *See Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003). This court reviews de novo Elia's constitutional challenges to the IJ's denial of § 212(c) relief. *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998).

INA § 106, 8 U.S.C. § 1105a (1994), originally provided the procedure allowing aliens to petition for judicial review of a final order of deportation.[3] *See Pak v. Reno*, 196 F.3d 666, 670 n.4 (6th Cir. 1999). The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") repealed INA § 106. IIRIRA § 306(b), Pub. L. No. 104-208, Div. C, tit. III, 110 Stat. 3009 (1996) (codified at Historical and Statutory Notes, 8 U.S.C. § 1101 (2001)). IIRIRA created "transitional rules" narrowing court jurisdiction to review deportation orders entered after October 30, 1996, in proceedings commenced before the effective date of the permanent amendments, April 1, 1997. *See* IIRIRA § 309(c)(4) (transitional rules); *id.* § 309(a) and (c)(1) (transitional rules apply to deportation proceedings pending on [April 1, 1997]); *id.* § 309(c)(4) (transitional rules apply to cases in which final order of deportation is entered [after October 30, 1996]); *see also Pilica v. Ashcroft*, 388 F.3d 941, 947 n.4 (6th Cir. 2004) (defining "transitional rules" cases). At the same time, IIRIRA created the "removal" proceeding.[4] IIRIRA also amended INA § 242, 8 U.S.C. § 1252, to impose new permanent rules restricting review of final orders of removal. *See* 8 U.S.C. § 1252(a) (2001). Like the transitional rules, these new rules are more restrictive of judicial review than the former INA § 106. On May 11, 2005, Congress enacted the REAL ID Act, which provides:

---

[3] The former § 1105a(c), INA § 106(c), provided that an order of deportation "shall not be reviewed by any court if the alien has not exhausted the administrative remedies available to him as of right under the immigration laws and regulations. . . ." 8 U.S.C. § 1105a(c) (1994), *repealed by* IIRIRA § 306(b), Pub. L. No. 104-208, Div. C, tit. III, 110 Stat. 3009 (1996).

[4] Through removal, IIRIRA fused two previously distinct expulsion proceedings, deportation and exclusion. *Jama v. Imm. & Customs Enforcement*, __ U.S. __, 125 S. Ct. 694, 704 (2005). Expulsion proceedings initiated after the April 1, 1997 effective date are removal proceedings.

A petition for review filed under former section 106(a) of the Immigration and Nationality Act (as in effect before its repeal by section 306(b) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 . . . ) shall be treated as if it had been filed as a petition for review under section 242 of the Immigration and Nationality Act (8 U.S.C. § 1252), as amended by this section.

REAL ID Act § 106(d), 119 Stat. 310-311 (effective on date of enactment). Petitions for review in "transitional rules" cases are filed under the procedure created by the former section 106(a). *See Pak*, 196 F.3d at 670 n.4. Therefore, the REAL ID Act effectively subjects orders of deportation in "transitional rules" cases to the same rules of judicial review, 8 U.S.C. § 1252(a), as apply to removal orders.

Since deportation proceedings against Elia were commenced before April 1, 1997, and the final order of deportation was entered after October 30, 1996, his is a "transitional rules" case. Because of the REAL ID Act amendments, 8 U.S.C. § 1252 now determines whether this court has jurisdiction to review the final order of deportation in Elia's case.

Further, the REAL ID Act's amendments to 8 U.S.C. § 1252 give us jurisdiction to review Elia's claims. INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), bars courts from reviewing any final order of removal against an alien who is removable by virtue of, inter alia, having been convicted of an aggravated felony. Elia was found deportable on this basis. However, 8 U.S.C. § 1252(a)(2)(D), as amended by REAL ID Act § 106(a)(1)(A)(iii), 119 Stat. 310, provides that § 1252(a)(2)(C) "shall [not] be construed as precluding review of constitutional claims or questions of law raised upon a petition for review. . . ."[5] Elia raises legal, rather than factual, arguments concerning his eligibility for § 212(c) relief.

In order to qualify for relief under the former § 212(c), an applicant must be a lawful permanent resident of the United States, and must have been domiciled in the United States for seven consecutive years. 8 U.S.C. § 1182(c) (1994), *repealed by* IIRIRA § 304(b), 110 Stat. 3009; 8 C.F.R. § 212.3(f)(2) (2004) (barring § 212(c) relief for aliens who have not met these requirements). The relief is at the Attorney General's discretion. 8 U.S.C. § 1182(c) (1994). Aliens convicted of one or more aggravated felonies, who have served a term of imprisonment of

---

[5]In *Calcano-Martinez v. INS*, 533 U.S. 348 (2001), the Supreme Court held that § 1252(a)(2)(C) barred direct review of the BIA's denial of § 212(c) relief to petitioners convicted of aggravated felonies, where the petitioners conceded that they were removable but disputed the BIA's findings on § 212(c) eligibility. *Id.* at 349-50. The Court stated, "[L]eaving aliens without a forum for adjudicating claims such as those raised in this case would raise serious constitutional questions." *Id.* at 351. The Court noted, however, that it had found in *INS v. St. Cyr*, 533 U.S. 289 (2001), that petitioners could seek review of removal orders in this situation through petitions for habeas corpus. *Calcano-Martinez*, 533 U.S. at 351. *Calcano-Martinez* suggested that habeas corpus should be the primary vehicle of review when an alien removable by reason of having been convicted of an aggravated felony, objects to an order of removal on the grounds that the alien was actually eligible for § 212(c) relief.

Through the REAL ID Act, Congress amended § 1252 to change this state of affairs. The new § 1252(a)(2)(D) restores direct review of constitutional and legal grounds for objecting to an order of deportation or removal against an aggravated felon; however, the REAL ID Act amendments limit habeas relief. *See* 8 U.S.C. § 1252(a)(5) and (e) (petitions for review sole means for judicial review of removal orders, save for limited habeas review of expedited removal orders); REAL ID Act § 106(d), 119 Stat. 311 (petitions for review sole means of judicial review of transitional rule deportation cases, treated effectively as removal cases under the new scheme). The new § 1252(a)(2)(D) therefore appears to abrogate this court's decisions in *Patel v. Ashcroft*, 401 F.3d 400, 406 (6th Cir. 2005), *Pulice v. INS*, 218 F.3d 505, 507-508 (6th Cir. 2000), and *Mansour v. INS*, 123 F.3d 423, 425-426 (6th Cir. 1997), which held that, when an alien is removable by reason of conviction of an aggravated felony, this court does not have jurisdiction to review constitutional claims on petition for review of a removal or deportation order.

at least five years, are ineligible for § 212(c) relief. *Id.*; 8 C.F.R. § 212.3(f)(4).[6] While the former § 212(c) explicitly applied only to respondents in exclusion proceedings, courts have construed it as providing relief to aliens facing orders of deportation, as well. *INS v. St. Cyr*, 533 U.S. 289, 295 (2001).

Elia contests the denial of § 212(c) relief on three grounds. At oral argument, Elia waived his fact-based argument that he served three days short of a five-year sentence and therefore was not statutorily ineligible for § 212(c) relief. Nevertheless, he argues, this court should deem him to have served only a two-year sentence, because the Michigan Court of Appeals' ultimately incorrect decision to reverse Elia's original two-to-twenty-year sentence caused Elia to "serve an 'improper' sentence of . . . three years longer than he should have." Petitioner's Br. at 15. Second, Elia argues that the Government failed to schedule a prompt deportation hearing. This delay, combined with the appeals court ruling that caused Elia to serve a five-year term, ensured that Elia would be denied § 212(c) relief. Elia argues that the Government's delay amounted to a violation of substantive and procedural due process, equal protection, and the Eighth Amendment's prohibition of cruel and unusual punishment. Third, Elia contends, equitable estoppel and the defense of laches should prevent the Government from benefitting from its delay in scheduling Elia's deportation hearing. All three grounds lack merit.

Elia requests that this court "interpret the language of 8 C.F.R. § 212.3(f)(4) in a manner so that the term of imprisonment for [Elia's] conviction was only two years, even though he served more time," because Elia was ultimately resentenced to a two-to-twenty-year term of imprisonment, rather than a five-to-twenty-year term. Petitioner's Br. at 5. This argument is unavailing. Determining whether imprisonment has made an alien ineligible for § 212(c) relief "turns not on the sentence imposed but on the period of actual incarceration." *United States v. Ben Zvi*, 242 F.3d 89, 99 (2d Cir. 2001). In his brief, Elia provides no legal support for his assertion that the court should deem him to have served only a two-year term.[7] Parole is discretionary in Michigan. Mich. Comp. Laws § 791.234(9) (2004). There is no reason to assume that Elia would have been paroled after only two years had Elia's original two-to-twenty-year term remained in effect throughout his

---

[6]As noted above, AEDPA eliminated § 212(c) relief for all aggravated felons, regardless of the term of imprisonment they served for their conviction. AEDPA § 440(d), Pub. L. No. 104-132, tit. IV, 110 Stat. 1214 (1996) (amending 8 U.S.C. § 1182(c) to bar § 212(c) relief for aggravated felons, among others). However, this court in *Pak*, 196 F.3d at 676, held that AEDPA § 440(d) does not apply to deportation cases pending when AEDPA was enacted on April 24, 1996. As of April 1, 1997, IIRIRA repealed § 212(c), replacing it with a new form of relief called "cancellation of removal," 8 U.S.C. § 1229b, which also barred aggravated felons from eligibility. *St. Cyr*, 533 U.S. at 297. Because Elia's deportation case was pending on April 24, 1996, he would be eligible for § 212(c) relief if he could demonstrate that he served a term of imprisonment of less than five years.

[7]At oral argument, Elia urged that this court should follow *Edwards v. INS*, 393 F.3d 299 (2d Cir. 2004), to reach this result. However, *Edwards* would not support our deeming Elia to have served a two-year term. In *Edwards*, the Second Circuit granted *nunc pro tunc* relief to two aliens who had erroneously been denied the opportunity to apply for § 212(c) relief. Both petitioners, like Elia, had been denied § 212(c) relief before the Supreme Court determined that AEDPA's bar on § 212(c) relief for aggravated felons did not apply retroactively. Unlike Elia, however, the petitioners in *Edwards* had not served five years' imprisonment at the time the IJ originally denied § 212(c) relief based on AEDPA. *Id.* at 304. "When a matter is adjudicated *nunc pro tunc*, it is as if it were done as of the time that it should have been done." *Id.* at 308. Here, the fact that Elia's § 212(c) application was once denied, incorrectly, on AEDPA-based grounds, had no relationship to the subsequent finding that Elia was ineligible because of having served five years in prison; the IJ could have rejected Elia's claim on the latter basis initially. Thus, *nunc pro tunc* relief is inapplicable here. Elia's real complaint is that the Government delayed too long between service of the OSC and scheduling a deportation hearing.

incarceration.[8] Deeming Elia to have served a two-year sentence for purposes of § 212(c) eligibility would disregard this reality.

In addition, Elia's constitutional challenges to the denial of § 212(c) relief appear meritless. Elia argues that the Government abridged a fundamental liberty interest, in violation of substantive due process, by failing to grant Elia a deportation hearing until five years after the service of an OSC on Elia. Petitioner's Br. at 21. No authority supports Elia's contention that a speedy deportation hearing constitutes a fundamental right implicating substantive due process.

Elia's claim of a procedural due process violation also fails. While procedural due process rights extend to deportation hearings, the alien must meet the high standard of proving that a defect in deportation proceedings constituted fundamental unfairness. *See Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). Other courts have soundly reasoned that the Government's delay in scheduling a deportation hearing after issuing an OSC does not violate due process, even if an intervening change in the law deprives an alien of eligibility for discretionary relief from deportation. *See Clavis v. Ashcroft*, 281 F. Supp. 2d 490, 496-497 (E.D. N.Y. 2003) (finding no due process violation where deportation proceedings were administratively closed in order for alien to pursue criminal appeal, and reopened only after alien was statutorily barred from § 212(c) relief)*; Marmolejos v. INS*, No. 95-1728, 1995 WL 639649 (1st Cir., Oct. 31, 1995) (holding that where, as here, alien was foreclosed from § 212(c) relief because the Government issued OSC before the alien had served five years' imprisonment, but held a deportation hearing only after, the alien did not have a due process right to a timely hearing); *Lopez-Moreno v. INS*, No. 00-2928, 2002 WL 31133097 (N.D. Ill. Jul. 16, 2002) (same); *cf. DiPeppe v. Quarantillo*, 337 F.3d 326, 333-334 (3d Cir. 2003) (holding in habeas case, where alien was convicted in 1992 but Government initiated removal proceedings only in 2000, when alien was automatically ineligible for § 212(c) relief by virtue of conviction for an aggravated felony, that the Government's delay in initiating removal proceedings did not violate due process); *but see Singh v. Reno*, 182 F.3d 504, 510-511 (7th Cir. 1999) (granting alien's petition for review, finding colorable due process claim because INS delays, including administratively closing deportation proceedings and rescheduling deportation hearing, resulted in alien's being statutorily barred from pursuing § 212(c) relief). It is true that the Immigration and Nationality Act provides, "In the case of an alien who is convicted of an offense that makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction." 8 U.S.C. § 1229(d)(1). However, this subsection does not "create any substantive or procedural right. . . ." *Id.* § 1229(d)(2); *see DiPeppe*, 337 F.3d 326 at 333-334 (holding that § 1229(d)(2) "fatally undermines" an argument that § 1229(d)(1) creates a procedural right). In any event, § 1229(d)(1) does not directly bear on any delay in scheduling a hearing in a deportation proceeding that has previously been timely initiated; deportation and removal proceedings "commence . . . when a charging document [such as an OSC] is filed with the Immigration Court," not when the Immigration Judge holds a hearing. 8 C.F.R. § 1003.14(a). The cases cited above correctly conclude that this delay does not violate any property or liberty right protected by the Due Process Clause.

Elia's claim of a denial of equal protection also fails, because his brief does not identify any classification the Government made, in denying him § 212(c) relief, that was not rationally related to a legitimate governmental purpose. *See Asad v. Reno*, 242 F.3d 702, 706 (6th Cir. 2001). Finally, Elia's claim that his deportation constitutes cruel and unusual punishment lacks merit; the Eighth Amendment is inapplicable to deportation proceedings because, as the Supreme Court has held,

---

[8]There is some indication that Elia was not from the outset a model prisoner: he was disciplined for possession of dangerous contraband shortly after his prison sentence began. Factors such as this may have prevented him from serving only the minimum within his sentence range.

deportation does not constitute punishment. *See INS v. Lopez-Mendoza,* 468 U.S. 1032, 1039 (1984).

Elia's equity-based arguments for opposing the denial of § 212(c) relief also lack merit. Elia argues that he orally requested § 212(c) relief when he was served with the OSC in 1991. He contends that the INS, with the purpose of rendering Elia statutorily ineligible for the relief, impermissibly delayed a deportation hearing in Elia's case. Neither the defense of laches nor the doctrine of equitable estoppel applies. The defense of laches, an equitable doctrine of uncertain relevance here, requires a showing of the plaintiff's "neglect to assert a right or claim which, taken together with lapse of time and other circumstances causing prejudice to the adverse party, operates as a bar in a court of equity." *Kansas v. Colorado*, 514 U.S. 673, 687 (1995) (quoting Black's Law Dictionary 875 (6th ed. 1990)). Elia fails to prove that the INS exhibited neglectful delay, in violation of any law or regulation, by holding Elia's deportation hearing when it did.

Finally, there is no basis for equitable estoppel in this case. Without ever so holding, the Supreme Court has left open the possibility that a claim of equitable estoppel may lie against a federal government agency for misleading statements or actions that a private party relies upon, where the agency commits "affirmative misconduct" causing the denial of a benefit. *See Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 421-423 (1990). In the context of an estoppel claim against the government, "[a]ffirmative misconduct is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant." *Estate of James v. United States Dep't of Agric.*, 404 F.3d 989, 995 (6th Cir. 2005) (quoting *Mich. Express, Inc., v. United States*, 374 F.3d 424, 427 (6th Cir. 2004)). Further, the claimant must have relied on the misrepresentation to his detriment. *Id.* It is unclear how Elia relied on the INS delay in hearing the deportation case. In any event, the Government's conduct here clearly does not sink to the level of "affirmative misconduct." In *INS v. Miranda*, 459 U.S. 14, 18 (1982), for instance, when the INS failed to act on a visa application for eighteen months, the agency's failure to act expeditiously did not amount to affirmative misconduct estopping the Government from denying the alien's application. Elia fails to demonstrate that the Government misled him, or that his reliance caused him to lose the benefit of § 212(c) relief.

For the foregoing reasons, we deny the petition for review.