File Name:  07a0371n.06
Filed:  May 31, 2007

NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

No. 06-3600

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

GUY VANG; CAROLINE VANG;
MELINE VANG; GENEVIEVE CHONG
FOUNG,

    *Petitioners*,

v.

ALBERTO R. GONZALES,
ATTORNEY GENERAL,

    *Respondent*.

ON PETITION FOR REVIEW
FROM A FINAL ORDER OF
THE BOARD OF IMMIGRATION
OF APPEALS

OPINION

**Before: KEITH and COLE, Circuit Judges; and OLIVER, District Judge.**[*]

    **SOLOMON OLIVER, JR., District Judge:**  Petitioners Guy Vang, Caroline Vang, Meline Vang,[1] and Genevieve Chong Foung (together, the "Vangs" or "Petitioners") appeal the final administrative order of the Board of Immigration of Appeals ("BIA"), affirming the Immigration Judge's decision to deny Petitioners' application for asylum and withholding of removal under the

---

[*]    The Honorable Solomon Oliver, Jr., United States District Judge for the Northern District of Ohio, sitting by designation.

[1]    Meline Vang's first name also appears in the record with the alternative spelling "Melanie".

Immigration and Nationality Act ("INA") and relief under the United Nations Convention Against Torture ("CAT"). For the reasons stated below, we **AFFIRM** the decision of the BIA.

I.

Lead Petitioner[2] Guy Vang ("Mr. Vang") was born in Laos in 1962. Members of his family worked for the CIA fighting against communism. When communists took over the country, his parents and ten brothers and sisters attempted to flee to Thailand, but only Mr. Vang made it. Mr. Vang spent four years in a refugee camp in Thailand before he was sponsored by a non-profit organization at the age of sixteen and moved to a United Nations refugee camp in France. Mr. Vang, believing that his family had been killed, went to school, worked, rented an apartment, owned a car, and eventually married another Laotion refugee, Geneviene Chong Foung, in France. Mr. Vang and his wife became French citizens, were issued French passports, and had two children in France.

Mr. Vang lived in France for approximately eleven years before learning that his family was alive and had been granted refugee status in the United States. The Vangs went to the United States Embassy in France to obtain a visitor visa to the United States, but were allegedly advised that they were eligible to enter to the United States by simply signing a document at the airport. The Vangs signed the documents at the airport, but contend that they were not aware that they were participating in the Visa Waiver Pilot Program ("VWPP").

The VWPP allows aliens from participating countries to enter the United States without a visa. Admission under the VWPP is contingent on several factors, including that the alien is seeking entry as a tourist for ninety days or less. 8 U.S.C. § 1187(a)(1). A VWPP applicant is required to

---

[2] Mr. Vang was considered the lead applicant for relief and protection from removal, while his wife and two minor daughters were considered to be derivative applicants whose claims were dependent on those of Mr. Vang.

-2-

read and sign the waiver. As a condition of receiving a waiver, aliens granted entry under the VWPP must waive the right to contest subsequent removal actions, except when seeking asylum. 8 U.S.C. § 1187(b)(2). The VWPP Information Forms specifically advise the alien that, as a condition of his expedited admission, he must "[w]aive all rights of review or appeal of admissibility determination made by an Immigration Officer, and all rights to contest action in deportation, except for asylum." (J.A. 252.)

The Vangs entered the United States on August 16, 1989. Under the VWPP they were permitted to stay for only ninety days; however, the Vangs remained beyond the time prescribed. Mr. Vang applied for asylum and withholding of deportation with the former Immigration and Naturalization Service ("INS"), now the Department of Homeland Security ("DHS"), on July 27, 1990. Although he attended an interview and was told a decision would be sent to him, no decision was sent.

According to Petitioners, the Vangs were rescheduled for another interview in November of 2000. The Vangs allege that they were then told, for the first time since initiating their application for asylum eleven years prior, that they were being placed in asylum-only proceedings, rather than administrative asylum review. On or about December 12, 2000, the INS referred the Vangs' case to an Immigration Judge for consideration. The government alleged the Vangs had signed written waivers of the right to defend against Removal/Deportation Proceedings for any reason other than asylum when they entered the United States under the VWPP. Mr. Vang did not remember signing anything before entering the United States. The Vangs filed a request to obtain copies of the signed waivers on January 12, 2001. The Vangs also filed a Motion to Terminate the asylum-only proceedings so that the Vangs could be placed in full removal proceedings if the waivers were not

produced. The government took over one year to respond with copies of the signed VWPP waiver forms.

The Immigration Judge conducted the asylum-only hearing on November 17, 2004, and rendered an oral decision on the record that same day. (J.A. 30.) During the fourteen-year wait for a decision on their asylum application, the Vangs established a restaurant in Dearborn, Michigan and had two additional children who were born in the United States. Mr. Vang was the only applicant who testified in support of his family's asylum claim. He stated that his parents were rank-and-file "soldiers" who fought the communist regime in Laos under General Vang Pao[3] and that around 1975, after the CIA and American forces had withdrawn, his family began to have problems with the Laotian government because of their support of the United States during the war. He described how he was separated from his family and eventually became a citizen of France. Mr. Vang's father also testified. He stated that he was not a high-ranking member of General Pao's forces, but that he feared retribution by the communists and so he fled Laos. Mr. Vang's father, while testifying that he worked for the CIA, produced no other evidence to substantiate his claim. Mr. Vang's father also testified that he and his family, other than Mr. Vang, were granted refugee status when they reached the United States. The DHS submitted the 2003 State Department County Reports on Human Practices for France and Laos, the State Department Profile of Asylum Claims and Country Conditions for Laos, and copies of the waivers signed by Petitioners prior to their admission to the United States.

The Immigration Judge denied the Vangs' Motion to Terminate and also denied the Vangs'

_____

[3]  General Vang Pao's name is mistakenly spelled "Vang Powell" in portions of the record and briefs.

-4-

applications for asylum. The Immigration Judge concluded that the Vangs had formally waived their right to a removal hearing when they entered the United States under the VWPP, and were therefore properly placed in asylum-only proceedings. The Immigration Judge further determined that the Vangs were ineligible for asylum relief because Mr. Vang was firmly resettled in France before arriving in the United States. The Immigration Judge also denied the Vangs' request for withholding of removal because Mr. Vang failed to demonstrate that he suffered any past persecution in Laos, or that he was affiliated with any group that might be subject to persecution. The Immigration Judge noted that the State Department reports indicated that since 1980, thousands of Laotian refugees had safely and successfully returned to Laos from abroad to visit relatives, permanently resettle, or even reclaim their citizenship. The Vangs appealed the Immigration Judge's decision to the BIA. On April 3, 2006, the BIA affirmed the Immigration Judge's decision and dismissed Petitioners' appeal. The instant petition for review followed.

## II.

Under the INA, the Attorney General may grant asylum to an alien who qualifies as a "refugee," which is defined as one "who is unable or unwilling to return to . . . [his or her home country] because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. §§ 1158(b)(1), 1101(a)(42)(A). This court reviews "'administrative findings of fact concerning whether [an] alien qualifies as a refugee under a substantial evidence test.'" *Liti v. Gonzales*, 411 F.3d 631, 636 (6th Cir. 2005) (quoting *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004) (alteration in original)). Under this standard, findings of fact are treated as "'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702

-5-

(6th Cir. 2004) (quoting 8 U.S.C. § 1252(b)(4)(B))). The burden is on the petitioner to show that "'the evidence presented was so compelling that no reasonable factfinder could fail to find the requisite persecution or fear of persecution.'" *Id.* at 636-37 (quoting *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003)).

Additionally, an appellate court "review[s] *de novo* alleged due process violations in removal hearings. *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005) (citing *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998)). In reviewing decisions under the VWPP of the INA, the court gives deference to the agency's reasonable interpretation of the statute. *See Uritsky v. Gonzales*, 399 F.3d 728, 731 (6th Cir. 2005) (citing *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424-25 (1999)). The court can reverse the agency's factual determinations only if the record evidence compels a contrary result. 8 U.S.C. § 1252(b)(4)(B). The court reviews the denial of a motion to terminate proceedings and the grant of an extension of time to file a response for an abuse of discretion. *See Abu-Khaliel v. Gonzales*, 436 F.3d 627, 634 (6th Cir. 2006).

III.

A. Asylum-Only Proceedings

Petitioners argue that they should not have been subjected to asylum-only proceedings under the VWPP because they "did not knowingly and intelligently" waive their rights to full removal proceedings and did not agree to the terms of the VWPP prior to entering the United States. Petitioners maintain that they thought they were coming to the United States on a visitor visa and that because the VWPP program was only forty-six days old at the time, "it is doubtful [Mr. Vang] was told anything about it." (Pet. Br. 18-19.)

Respondent correctly points out that the "knowingly and intelligently" test applies to only

the waiver of a constitutional right and that Petitioners' claims regarding waiver in this case are not constitutional claims because at the time the Vangs signed the waivers, they were aliens residing outside of the United States. The Supreme Court has noted that "an alien seeking initial admission to the United States requests a privilege and has no constitutional rights regarding his application, for the power to admit or exclude aliens is a sovereign prerogative." *Landon v. Plasencia*, 459 U.S. 21, 32 (1982); *see United States v. Verdugo-Urquidez*, 494 U.S. 259, 271 (1990) ("[A]liens receive constitutional protections [only] when they have come within the territory of the United States and developed substantial connections with the country."). Because the Vangs were not waiving rights of constitutional significance when they signed the visa waiver forms prior to entering the United States, the knowing and intelligent waiver test does not apply.

Moreover, the Vangs' contention that they were not informed about the VWPP and "were not told by anyone that they would be waiving their rights to a removal proceeding" are contradicted by the record evidence. (Pet. Br. 19.) The Vangs signed waiver forms, which stated that for admission to the United States under the VWPP "you must . . . [w]aive all rights of review or appeal of admissibility determination made by an immigration officer, and all rights to contest action in deportation, except for asylum." (J.A. 248-57.) In *Wigglesworth v. INS*, 319 F.3d 951 (7th Cir. 2003), the petitioner also claimed that her waiver pursuant to the VWPP was not knowingly made. *Id.* at 959. The Seventh Circuit disagreed, holding that the petitioner's waiver was valid. The court reasoned in part that "the waiver form was exceptionally clear that, in signing the form, [petitioner] was waiving her rights to a hearing before an IJ, an administrative appeal to the BIA and judicial review of the administrative decision." *Id.* Because the Vangs signed the waivers, we find, like the

court in *Wigglesworth*, that Petitioners' waiver of their rights to contest removal proceedings was valid. Thus, Petitioners were properly placed in asylum-only proceedings.

## B. Estoppel

The Vangs argue that the DHS should be estopped from effecting their removal because the government unduly delayed their proceedings and failed to timely produce the waiver forms signed by the Vangs. This court has observed that "the Supreme Court has left open the possibility that a claim of equitable estoppel may lie against a federal government agency" in an immigration context. *Elia v. Gonzales*, 431 F.3d 268, 276 (6th Cir. 2005) (citing *Office of Pers. Mgmt. v. Richmond*, 496 U.S. 414, 421-23 (1990)). To the extent that federal courts have entertained estoppel claims against the government, a showing of "affirmative misconduct" causing the denial of a benefit is required. *See id.* As the *Elia* court explained, "[i]n the context of an estoppel claim against the government, '[a]ffirmative misconduct is more than mere negligence. It is an act by the government that either intentionally or recklessly misleads the claimant.'" *Id.* (quoting *Estate of James v. United States Dep't of Agric.*, 404 F.3d 989, 995 (6th Cir. 2005) (quoting *Mich. Express, Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004))).

Petitioners have not alleged, nor proven, that the government engaged in affirmative misconduct. They only argue that they never would have stayed in the United States had they known that it would take fourteen years before they were able to present evidence in support of their application. However, the Supreme Court has determined that delay is insufficient to prove affirmative misconduct. *INS v. Miranda*, 459 U.S. 14, 19 (1982) ("Proof only that the Government failed to process promptly an application falls far short of establishing such conduct.").

Petitioners also contend that they have shown "identifiable prejudice" and cite *Kowalczyk v. INS*, 245 F.3d 1143 (10th Cir. 2001) for the position that if a petitioner can show identifiable prejudice, then estoppel can apply, without any demonstration of affirmative misconduct. In *Kowalczyk*, the Tenth Circuit held that estoppel would not prevent the BIA from enforcing its removal order despite a nine-year delay and stated, "[i]n the absence of a showing that the delay in the present case was deliberate or resulted in identifiable prejudice to the petitioner's case, . . . delay is insufficient to demonstrate affirmative misconduct . . . ." *Id.* at 1150. Though Petitioners allege "identifiable prejudice," they have not shown how the outcome of their asylum-only proceedings would have been different, but for the government's delay. Despite that delay, Mr. Vang's father was able to testify as to his activities in Laos under General Vang Pao. The Immigration Judge found that Mr. Vang failed to demonstrate that he was affiliated with any group that might be subject to persecution.

Consequently, we find that the DHS should not be estopped from effecting the Vangs' removal as Petitioners have not shown affirmative misconduct or identifiable prejudice.

### C. Due Process

The Vangs argue that the government's fourteen-year delay in completing their asylum-only proceedings deprived them of due process. The Fifth Amendment guarantees of due process extend to aliens in immigration proceedings and entitle aliens to a full and fair hearing. *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). We have previously held that "reviewing an alleged due process violation is a two-step inquiry: first, whether there was a defect in the removal proceeding; and second, whether the alien was prejudiced because of it." *Vasha*, 410 F.3d at 872.

Petitioners point to section 1158(d)(5)(A)(ii) which states that "the initial interview or hearing on the asylum application shall commence not later than 45 days after the date an application is filed." However, section 1158(d)(7) makes clear that "[n]othing in this subsection shall be construed to create any substantial or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers . . . ." 8 U.S.C. § 1158(d)(7). Moreover, this court has recognized that the government's delay in scheduling or conducting immigration proceedings does not violate due process. *See Elia*, 431 F.3d at 275-76 (holding that a five-year delay was not a violation of due process and stating, "[n]o authority supports [petitioner's] contention that a speedy deportation hearing constitutes a fundamental right implicating substantive due process."). Similarly, the fourteen-year delay which Petitioners rely on in this case does not violate their due process rights.

In addition, Petitioners fail to show prejudice. This Circuit has instructed that "'[p]rejudice' inquires, *ex post*, whether due process was violated by evaluating whether the alien's claims could have supported a different outcome." *Sako v. Gonzales*, 434 F.3d 857, 864 (6th Cir. 2006). Petitioners fail to allege, or show, that they would have been granted relief or protection from removal had the government acted sooner. They do not identify what evidence, if any, they might have presented in support of their application were they not precluded from doing so by the delay.

As a delay in scheduling is not a violation of due process, and because Petitioners have failed to show prejudice, we find that the scheduling delay did not violate Petitioners' due process rights.

### D. Abuse of Discretion

The Vangs argue that the Immigration Judge abused his discretion by repeatedly allowing the government additional time to file a response to the Vangs' motion to terminate and their motion

for copies of the signed waiver forms. It is Petitioners' position that the Immigration Judge should not have permitted the government additional time to produce the signed visa waiver forms and that their motion to terminate the asylum-only proceedings should have been granted, thus allowing them to seek alternative relief in removal proceedings.

In determining whether the Immigration Judge abused his discretion, this court must decide whether the Immigration Judge's decision "'was made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as invidious discrimination . . . .'" *Abu-Khaliel*, 436 F.3d at 634 (quoting *Balani v. INS*, 669 F.2d 1157, 1161 (6th Cir. 1982)). The Immigration Judge is afforded wide latitude in conducting proceedings and has the authority to set and extend time limits for filings. 8 C.F.R. § 1003.31(c). Additionally, there is no definite time limit established by the statute and regulations for presenting documents in a VWPP case. *See* 8 C.F.R. § 217. Obtaining copies of the signed waiver forms was important to the proceeding before the Immigration Judge. Moreover, as the BIA explained, "[h]ad the Immigration Judge decided to terminate the proceedings due to the failure of the DHS to produce the [waiver forms], the [Vangs] would not then be entitled to removal proceedings. Rather, the DHS could again institute asylum only proceedings, and produce the documents at that time." (J.A. 5.) As such, it does not appear that the Immigration Judge's decision was made "without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis[.]" *Abu-Khaliel*, 436 F.3d at 634. Consequently, we find that he did not abuse his discretion by allowing the government more time to produce copies of the waivers.

### E. Firm Resettlement

The Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA")

provides that an alien may not obtain asylum if he "was firmly resettled in another country prior to arriving in the United States."  8 U.S.C. § 1158(b)(2)(A)(vi).  "Firmly resettled" is defined as follows:

> An alien is considered to be firmly resettled if, prior to arrival in the United States, he or she entered into another country with, or while in that country received, an offer of permanent resident status, citizenship, or some other type of permanent resettlement unless he or she establishes:
>
> (a) That his or her entry into the nation was a necessary consequence of his or her flight from persecution, that he or she remained in that nation only as long as was necessary to arrange onward travel, and that he or she did not establish significant ties in that country; or
>
> (b) That the conditions of his or her residence in that nation were so substantially and consciously restricted by the authority of the country of refuge that he was not in fact resettled. . . .

8 C.F.R. § 208.15.

The Immigration Judge determined that Mr. Vang was firmly resettled in France, thus asylum relief was not available.  The BIA affirmed this determination.  Petitioners argue on appeal that they were not firmly resettled in France because the firm resettlement doctrine did not exist in 1990 and because Mr. Vang never intended to resettle in France.  Though the IIRIRA was not enacted until 1996, *see Ali v. Reno*, 237 F.3d 591, 594 (6th Cir. 2001), and Petitioners filed for asylum on July 27, 1990, Petitioners recognize that even prior to its enactment, firm resettlement "was one factor the IJ could have considered."[4]  (Pet. Reply 5.)  In 1971, the Supreme Court announced that the presence of firm resettlement constituted a factor for consideration in asylum petitions.  *See Rosenberg v.*

---

[4]    Moreover, Petitioners cite no authority for their position that the firm resettlement doctrine cannot be applied to asylum applications filed before 8 U.S.C. § 1158 was enacted.

*Woo*, 402 U.S. 49, 56 (1971). Additionally, an alien's intent is not an exception to the firm resettlement doctrine. *See* 8 C.F.R. § 208.15.

Petitioners also argue that even if the firm resettlement doctrine controls, it is inapplicable here because Mr. Vang was only sixteen when he arrived in France. Appellant cites *Vang v. INS*, 146 F.3d 1114 (9th Cir. 1998) in support of their position, but that case is distinguishable. In *Vang*, the petitioner was a minor at the time he sought asylum. *Id.* at 1115. The court looked to whether the minor's parents had firmly resettled in another country to determine whether the minor had firmly resettled elsewhere and concluded that they had. The BIA affirmed the denial of the minor's application for asylum and withholding of deportation. In the instant case, Mr. Vang was not a minor at the time he filed for asylum. He was twenty-eight years old and had lived in France for eleven years, two years as a minor and nine years as an adult. Mr. Vang admitted that he was granted citizenship, was issued a French passport, attended schools, married his wife, started a family, rented and owned property, and held a job, all in France. In light of this evidence, we cannot find that the board abused its discretion in finding that Petitioners were firmly resettled in France.

## F. Withholding of Removal and Relief under CAT

In addition to Petitioners' asylum claim, the Vangs also petition for review of the BIA's denial of their request for withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and withholding pursuant to CAT. CAT provides protection to aliens in the form of withholding of removal to the country of torture. 8 C.F.R. § 208.16(c)(4); *Ali*, 237 F.3d at 596. The "[w]ithholding of removal is required if the alien can demonstrate that 'his or her life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion.'" *Liti*, 411 F.3d at 640 (quoting 8 C.F.R. §

-13-

1208.16(b)).  A decision that an alien is not eligible for withholding of removal is "conclusive unless manifestly contrary to law" and "the administrative findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary . . . ."  8 U.S.C. § 1252(b)(4)(B), (C).  The applicant for withholding of removal pursuant to CAT bears the burden of proof to "'establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal.'"  *Ali*, 237 F.3d at 596 (quoting 8 C.F.R. § 208.16(c)(2)).

In the instant case, the Immigration Judge found that Mr. Vang failed to demonstrate that he suffered any past persecution in Laos, or that he was affiliated with any group that might be subject to persecution.  The Immigration Judge noted that the State Department reports indicated that since 1980, thousands of Laotian refugees had safely and successfully returned to Laos from abroad to visit relatives, permanently resettle, or even reclaim their citizenship.  The BIA affirmed.

Petitioners also argue that the Immigration Judge improperly referenced a document not in evidence.  The document not in evidence referred to by the Immigration Judge was a form that Mr. Vang's father testified as to having filled out with the names of his siblings and children before he came to the United States.  Mr. Vang's father testified that he gave this form to Mr. Vang, but Mr. Vang did not produce it at the asylum-only hearing.  The Immigration Judge drew an adverse inference from this, surmising that Mr. Vang's name was not on the form.  The Immigration Judge also found that Mr. Vang had not proffered any other credible evidence that he was related to his "purported father." (J.A. 40.)  However, the Immigration Judge concluded that even if Mr. Vang's "story" was true, "a clear reading of the latest country reports reflects that people in those shoes are not subject to a pattern or practice of persecution in Laos.  Thus, [Mr. Vang] would fail on this

burden . . . ." *Id.* The Immigration Judge's conclusion is supported by the testimony of Mr. Vang's father, who stated that he was not a high-ranking member of General Pao's forces.

As previously stated, this court can reverse a denial of relief only where the alien has shown that "the evidence presented was so compelling that no reasonable fact finder could fail to find" that the alien established his eligibility for asylum and withholding of removal. *Liti*, 411 F.3d at 636-37 (internal quotations and citations omitted). As Petitioners have failed to make the requisite showing, we find that the BIA's decision denying Petitioners' claims for withholding of removal and relief under CAT was supported by substantial evidence.

IV.

For the foregoing reasons, we **AFFIRM** the final administrative order of the BIA.