

2003 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-28-2003

# DiPeppe v. Quarantillo

Precedential or Non-Precedential: Precedential

Docket No. 01-4043

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2003

Recommended Citation

"DiPeppe v. Quarantillo" (2003). *2003 Decisions.* Paper 316.
http://digitalcommons.law.villanova.edu/thirdcircuit_2003/316

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2003 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

Filed July 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Nos. 01-4043 & 01-4096

RITA DIPEPPE

v.

ANDREA QUARANTILLO, District Director of the New
Jersey office of the Immigration and Naturalization
Service; RALPH GREEN, Warden, Hudson County
Correctional Facility and the Immigration and
Naturalization Service

Andrea Quarantillo,
Ralph Green,

Appellants

On Appeal from the United States District Court
for the District of New Jersey
(Dist. Ct. No. 01-cv-03181)
District Judge: Hon. William G. Bassler

Argued: November 4, 2002

Before: BECKER,* *Chief Judge*, McKEE and
HILL,** *Circuit Judges*

(Opinion Filed: July 28, 2003)

---

* Judge Becker completed his term as Chief Judge on May 4, 2003.

** Honorable James C. Hill, Senior Judge, United States Court of Appeals for the Eleventh Circuit, sitting by designation.

STEVEN A. MORLEY, ESQ. (Argued)
Bagia & Morley
111 South Independence Mall
The Bourse Building, Suite 592
Philadelphia, PA 19106
*Attorney for Appellee*

AUDREY BENISON, ESQ.
United States Department of Justice
Office of Immigration Litigation
1331 Pennsylvania Avenue, N.W.
Washington, DC 20530

MARGARET PERRY
AUDREY B. HEMESATH (Argued)
United States Department of Justice
Office of Immigration Litigation
P.O. Box 878
Ben Franklin Station
Washington, DC 20044
*Attorneys for Appellants*

---

**OPINION OF THE COURT**

---

McKEE, Circuit Judge:

The Immigration and Naturalization Service appeals the district court's determination that § 212(h) of the Immigration and Nationality Act ("INA")[1] violates the equal protection component of the 5th Amendment's Due Process Clause. In her cross-appeal, Rita Dipeppe challenges the District Court's ruling that she is not entitled to seek relief from removal under INA § 212(c).[2] For the reasons that follow, we will reverse the District Court's order as to § 212(h) and affirm it as to § 212(c).

---

1. INA § 212(h) is codified at 8 U.S.C. § 1182(h).

2. INA § 212(c) was codified at 8 U.S.C. § 1182(c) (1995).

## I. INA §§ 212(h) AND 212(c)

INA § 212(h) previously gave the Attorney General the discretion to waive an alien's inadmissibility for crimes of moral turpitude if an alien was a spouse, parent, or child of a United States citizen or permanent resident alien, and the alien seeking the waiver could demonstrate that denial of admission would cause extreme hardship to the citizen or permanent resident alien. INA § 212(h)(1)(B). However, Congress amended § 212(h) in 1996. That provision of the INA now removes this discretion in the case of aliens who were previously admitted as permanent residents and had either been convicted of an aggravated felony or had not resided in the United States for seven continuous years. INA § 212(h).[3] The statute applies only to aliens who have the status of legal permanent resident ("LPR"), it does not apply to non-legal permanent resident aliens ("non-LPR").[4]

---

3. In 2000, INA § 212(h) [8 U.S.C. § 1182(h)], read in pertinent part:

> No waiver shall be provided under this subsection in the case of an alien who has been convicted of (or who has admitted committing acts that constitute) murder or criminal acts involving torture, or an attempt or conspiracy to commit murder or a criminal act involving torture. No waiver shall be granted under this subsection in the case of an alien who has previously been admitted to the United States as an alien lawfully admitted for permanent residence if either since the date of such admission the alien has been convicted of an aggravated felony or the alien has not lawfully resided continuously in the United States for a period of not less than 7 years immediately preceding the date of initiation of proceedings to remove the alien from the United States. No court shall have jurisdiction to review a decision of the Attorney General to grant or deny a waiver under this subsection.

4. In the most basic sense, one's status as an LPR, or immigrant, corresponds with his or her intentions with regard to residence in the United States. According to INA § 101(a)(20) [8 U.S.C. § 1101(a)(20)],

> [t]he term "lawfully admitted for permanent residence" means the status of having been lawfully accorded the privilege of residing permanently in the United States as an immigrant in accordance with the immigration laws, such status not having changed.

Obtaining lawful permanent resident status is a condition precedent to United States citizenship, and therefore the objective of anyone who wishes to remain in the United States on a long term basis. *See* RICHARD A. BOSWELL, IMMIGRATION AND NATIONALITY LAW, 551 (3d ed. 2000) (describing

Thus, an alien who is a non-LPR may still attempt to have the Attorney General waive eligibility for removal. *See DeLeon-Reynoso v. Aschroft*, 293 F.3d 633, 637 (3d Cir. 2002) (describing statutory distinction); and *In re Michel,* 21 I & N Dec. 1101, 1104 (B.I.A. 1998)(same).

Prior to repeal, § 212(c) also gave the Attorney General the authority to waive inadmissibility of otherwise deportable or excludable legal aliens. *INS v. St. Cyr*, 533 US 289, 294 (2001). Although § 212(c) only applied to exclusion proceedings on its face, the Board of Immigration Appeals ("BIA") also allowed any permanent resident alien with lawful unrelinquished domicile of seven consecutive years to apply for a discretionary waiver from deportation. *Id.* at 295. If the application was granted, deportation proceedings were terminated and the alien could remain in the United States as a permanent resident. As might be expected, the number of aliens relying upon eligibility for § 212(c) waivers began to increase as Congress broadened the definition of deportable offenses. *Id.* at 295-96.

In 1990, Congress amended § 212(c) to preclude relief for anyone convicted of an aggravated felony who had served a term of imprisonment of at least five years. *INS v. St. Cyr*, 533 U.S. 289, 295-96 (2001). In 1996, Congress repealed § 212(c) in its entirety by enacting certain provisions of the Antiterrorism and Effective Death Penalty Act ("AEDPA"), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"). Section 212(c) was replaced

the importance of lawful permanent resident status). While the status of being "lawfully admitted for permanent residence" is the only type of lawful immigrant status, the numerous nonimmigrant classifications are set forth in INA § 101(a)(15) [8 U.S.C. § 1101(a)(15)], and include individuals, who, for whatever reason, wish to remain in the United States on a temporary basis. *See* CHARLES GORDON ET AL., IMMIGRATION LAW AND PROCEDURE § 1.03[2][e] at 1-30 (2003) (explaining the distinguishing features of nonimmigrant classifications and corresponding visas which allow students, business visitors, tourists and others to temporarily remain in the United States). These differences in length of stay between immigrant and nonimmigrant largely accounts "for the more detailed attention ordinarily given to immigrant visa applications." *Id.* at § 8.04[1], 8-6.

with a new § 240A which "permits the Attorney General . . . in her discretion to cancel removal in certain circumstances, *but not when the alien has been convicted of an aggravated felony* as defined by the INA." *Xu Cheng v. INS*, 206 F.3d 308, 312 (3rd Cir. 2000) (emphasis added). IIRIRA § 304(b), 110 Stat. 3009-597 (repealing § 212(c)); *see also* IIRIRA § 304(b), 110 Stat. 3009-594 (creating 8 U.S.C. § 1229(b)).[5]

## II. FACTUAL BACKGROUND

Rita DiPeppe is a native and citizen of Italy who was admitted to the United States on September 21, 1955 as an LPR. On August 5, 1992 she pled guilty to aggravated manslaughter after fatally shooting her husband with a handgun.[6] She was sentenced to a term of twenty-seven years imprisonment with nine years of parole ineligibility. Based on her conviction, the INS issued and served upon DiPeppe an Order to Show Cause ("OSC") and Notice of Hearing dated September 24, 1992. Those documents informed DiPeppe that the INS was leveling deportation charges against her under former INA § 241(a)(2)(iii), 8 U.S.C. § 1251(a)(2)(A)(iii) based upon her conviction for a crime defined as an "aggravated felony" under the INA.

---

5. Prior to its repeal, § 212(c) stated in pertinent part:

> Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

6. The circumstances surrounding DiPeppe's killing of her husband apparently included mental and physical abuse by her husband over the course of their 23 year marriage. The sentencing judge recommended that she not be deported because of that offense. Supp. App. at 7.

However, the INS never filed its OSC or Notice of Hearing with the Immigration Court.[7]

Thereafter, DiPeppe attempted to obtain a waiver of deportation under INA § 212(c) by filing Form I-191 (Application for Advance Permission to Return to Unrelinquished Domicile) with the INS. On November 29, 1995, the New Jersey District Director of the INS denied DiPeppe's application on the merits. The Director concluded that DiPeppe's conviction for aggravated manslaughter precluded the Attorney General's favorable exercise of discretion. DiPeppe's counsel subsequently made several attempts to schedule a hearing with the INS so that her waiver application could be considered by an Immigration Judge.[8] However, since the INS had not filed its OSC and Notice of Hearing with the Immigration Court, the court did not set a hearing date.

Finally, on August 2, 2000 (eight years after the initial OSC in 1992), the INS issued a Notice to Appear ("NTA"),[9] in which it again charged DiPeppe with being removable from the United States pursuant to INA § 237(a)(2)(A)(iii) based upon her conviction for an aggravated felony after admission.[10] Based upon that NTA, DiPeppe was taken into INS custody when she was released from prison on her manslaughter charge.

7. Under INS regulations in effect in 1992, filing the charging document with the Immigration Court commenced proceedings to determine the deportability of an alien, which required the alien to appear before an Immigration Judge for a hearing. *See* 8 C.F.R. § 242.1(a)-(b) (1992).

8. It appears from the administrative record that DiPeppe's counsel sent seven letters to INS officials in his efforts to procure a hearing on her OSC.

9. IIRIRA significantly altered the landscape of immigration proceedings. The INS now serves a Notice to Appear rather than an Order to Show Cause. Furthermore, deportation proceedings are now termed "removal proceedings" and suspension of deportation is called "cancellation of removal." *See* 8 U.S.C. §§ 1229, 1229a, 1229b.

10. INA § 237(a)(2)(A)(iii), codified at 8 U.S.C. § 1227(a)(2)(A)(iii), states: "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable."

At her ensuing hearing, DiPeppe argued for discretionary relief pursuant to §§ 212(c) and 212(h). However, the Immigration Judge concluded that she had been convicted of, and imprisoned for, an aggravated felony as defined under the INA and that she was therefore not eligible for the discretionary relief she sought *See* §§ 212(c) and 212(h). On appeal, the BIA affirmed the Immigration Judge's decision and DiPeppe thereafter petitioned the District Court for a writ of habeas corpus staying removal and vacating the final order of removal.

## III. DISTRICT COURT PROCEEDINGS

The District Court began its analysis by examining DiPeppe's eligibility for § 212(c) relief.[11] The District Court first noted that DiPeppe had already been denied § 212(c) relief by the INS District Director in 1995. However, the court rejected DiPeppe's argument that the delay in prosecuting her removal constituted a due process denial. That claim was based upon DiPeppe's assertion that the delay placed her beyond the five year incarceration limit on discretionary relief that was originally a condition of the favorable exercise of discretion under § 212(c). According to DiPeppe, the delay had improperly precluded her from seeking the remedies she was otherwise entitled to before AEDPA and IIRREA became law. When she entered her guilty plea, § 212(c) waivers were unavailable only if the alien "had been convicted of an aggravated felony *and* . . . had served a prison term of at least five years for such [felony]." *DeSousa v. Reno*, 190 F.3d 175, 178 (3rd Cir. 1999) (emphasis added). Thus, the delay in processing her removal resulted in her requesting relief after she had been imprisoned for more than five years.

DiPeppe also argued that, since the INS delayed to the point that she was forced to request discretionary relief after she had already been incarcerated for 5 years, the government should be estopped from relying upon the length of her incarceration to preclude her from being

---

11. Counsel for the government initially conceded that he had not considered whether DiPeppe would have been eligible for § 212(c) relief when she pled guilty in 1992.

eligible for seeking discretionary relief from removal. The District Court rejected both arguments. As to the latter claim, the court reasoned that, even if DiPeppe was able to prove the traditional elements of estoppel, she could not establish any affirmative misconduct by the government.

The court did, however, agree that the INA's disparate treatment of LPRs and non-LPRs codified in § 212(h) was a violation of the equal protection guarantee embodied in the Due Process Clause of the Fifth Amendment. The court reasoned that there was no rational relationship between any legitimate governmental purpose and the disparate treatment of LPRs and non-LPRs applying for waivers under § 212(h). Accordingly, the court held that the statutory distinction between LPRs and non-LPRs denied DiPeppe due process of law, and she was therefore eligible to seek discretionary relief from removal from the Attorney General. This appeal and cross-appeal followed. The INS appeals the District Court's determination that § 212(h) is a violation of the Fifth Amendment Due Process Clause, and DiPeppe appeals that court's conclusion that she is not eligible to seek relief under § 212(c) as it existed before repeal.

## IV. DISCUSSION

Although DiPeppe's equal protection challenge to § 212(h) has some appeal, it is precluded by our holding in *DeLeon-Reynoso v. Ashcroft*, 293 F.3d 633 (3d Cir. 2002).[12] There, we held that the distinction between LPRs and non-LPRs applying for waivers under § 212(h) survives rational basis inquiry and that provision of the INA is therefore not a violation of the equal protection component of the Fifth Amendment's Due Process clause. *DeLeon-Reynoso*, 293 F.3d at 640-41. We summarized the alien's argument there as follows:

> De Leon argues that § 1182(h) violates the equal

12. The District Court did not have the benefit of our analysis in *DeLeon-Reynoso* when it ruled upon DiPeppe's equal protection argument. A motions panel of this Court relied upon our holding in that case in rejecting DiPeppe's equal protection claim before we heard oral argument.

protection component of the Fifth Amendment's Due Process clause by making an impermissible distinction between two categories of aliens who are not permitted to reside in the United States: those who have not previously been lawfully admitted to the United States (i.e., non-LPRs) and those who have been previously admitted to the United States but have not resided in the United States for seven consecutive years before removal proceedings are initiated (LPRs). . . . De Leon asserts that this distinction allows a criminal alien who has never had permanent resident status in the United States, never acquired equities or familial ties, to secure a waiver, while those who have previously been admitted as lawful permanent residents, but with less than the seven years required residence, will be deported. Thus, he argues, the amendatory 1996 legislation is unconstitutional.

293 F.3d at 638 (internal citations omitted). However, in denying the alien's equal protection claim, we nevertheless expressed concern with the inequities that could result from this distinction, *id.* at 640, and we urged Congress to address them. We reiterate that concern here, and again urge Congress to address the potential inequities endemic in this statutory scheme.[13] Here, as in *De Leon-Reynoso*

[o]ur holding that the § 1182(h) distinction survives rational basis scrutiny should not be mistaken for an endorsement of the policy. We urge Congress to reconsider the ramifications of entirely eliminating the Attorney General's discretion in this area. At times, pathetic, heart-wrenching pain for families and burdensome consequences for employers and taxpayers accompany removal proceedings.

*Id.*[14]

---

13. In doing so, we do not intend to minimize the crime of violence DiPeppe committed, nor suggest that the equities in her case would warrant relief from removal.

14. This does not, of course, imply that it is the job of courts to "endorse" policy choices made by Congress. Rather, our concern arises from an appropriate vigilance regarding inequities that may result from

As noted above, DiPeppe has filed a cross-appeal from the District Court's rejection of her claim that she remains eligible for relief under § 212(c) pursuant to the Supreme Court's holding in *INS v. St. Cyr.* There, the Court held that § 212(c) relief "remains available for aliens, like respondent, whose convictions were obtained through plea agreements and who, notwithstanding those convictions, would have been eligible for § 212(c) relief *at the time* of their plea under the law then in effect." 533 U.S. 289, 326 (2001) (emphasis added).

DiPeppe makes an additional, related, argument based upon the INS delay in processing her removal. She argues that the delay entitles her to relief even if we reject her argument under *St. Cyr.* She argues that the INS violated her due process rights by failing to promptly place the matter before an Immigration Judge in violation of its own regulations, thereby precluding her from seeking relief before she had served five years in prison and thus became ineligible for discretionary relief under § 212(c) as it existed at the time of her guilty plea. She therefore argues once again that the government should be estopped from relying upon the length of time she has been imprisoned to deny her relief under § 212(c). According to DiPeppe, she would have been eligible for such relief had the government processed her removal in a timely manner.

In responding to DiPeppe's cross-appeal, we note at the outset that aliens facing removal are afforded due process protections. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001). Moreover, we afford DiPeppe's due process claim *de novo* review. *Chong v. INS*, 264 F.3d 378, 386 (3d Cir. 2001). Nevertheless, we conclude that the District Court was correct in holding that she is now foreclosed from seeking relief under § 212(c), and in rejecting her estoppel argument. We address each of her arguments in turn.

---

legislation that treats distinct groups differently. We therefore think it appropriate to reiterate our concern about the equities of the disparate treatment required under § 212(h). *See In re Murchison*, 349 U.S. 133, 136 (1955) ("[T]o perform its high function in the best way[,] 'justice must satisfy the appearance of justice.' ") (quoting *Offutt v. United States*, 348 U.S. 11, 14 (1954)).

In *St. Cyr*, the Supreme Court was confronted with the retroactive effect of the AEDPA and IIRIRA amendments on discretionary relief from deportation and removal proceedings in the case of an alien who pled guilty to a deportable crime before those amendments became effective. 533 U.S. at 292-93. The Court held that § 212(c) relief remained available for a certain class of aliens whose (1) convictions were obtained through plea agreements prior to AEDPA's effective date of April 24, 1996, (2) who had a "lawful unrelinquished domicile of seven consecutive years," and (3) were not deemed ineligible for a discretionary waiver for having served more than five years incarceration following a conviction for an aggravated felony. *Id.* at 326 (addressing the retroactive effect of AEDPA and IIRIRA on availability of § 212(c) relief).

As noted above, Rita DiPeppe's conviction arose from a guilty plea in 1992, and she had been an LPR since her admission to the United States in 1955. However, her twenty-seven year prison sentence included an initial nine year period of parole ineligibility. The Court in *St. Cyr* recognized that the language of § 212(c) places the discretionary relief afforded therein beyond the reach of anyone convicted of an aggravated felony who has served a term of imprisonment of five or more years. *See* INA § 212(c). In *St. Cyr*, the Court barred retroactive application of the elimination of discretionary relief under § 212(c) because the possibility of being afforded such relief may well have been a factor in the alien's decision to plead guilty and waive valuable constitutional guarantees. The Court reasoned: "[b]ecause respondent, and other aliens like him, almost certainly relied upon that likelihood in deciding whether to forgo their right to a trial, the elimination of any possibility of § 212(c) relief by IIRIRA has an obvious and severe retroactive effect." *St. Cyr*, 533 U.S. at 325.

That is simply not DiPeppe's situation. She knew when she entered her guilty plea that she would be exposed to a period of incarceration that could preclude consideration under § 212(c). It appears that Dipeppe entered an "open" plea rather than a negotiated plea as was the case in *St. Cyr*.[15]

15. Although the record is not without ambiguity on this point, it appears from all our examination of the sentencing court's stated

The Supreme Court was particularly concerned about the reasonable expectations endemic in the *quid pro quo* of the negotiated guilty plea in *St. Cyr. See* 533 U.S. at 321 ("Plea agreements involve a *quid pro quo* between a criminal defendant and the government."). Nevertheless, by pleading guilty to a crime of violence such as manslaughter, DiPeppe had to realize that she would almost certainly be ineligible for the discretionary relief that may otherwise have been available under § 212(c). Moreover, she was clearly not eligible for discretionary waiver once the court sentenced her to a period of incarceration that mandated her imprisonment for more than five years. That is precisely what happened when the court ordered that she remain ineligible for parole for nine years. Therefore the reasoning of *St. Cyr* does not apply here.

As the District Court correctly noted, adopting DiPeppe's interpretation of § 212(c) relief would force the INS to consider an alien's eligibility in a vacuum, ignoring any change in circumstance, including the commission of a felony, between the time the application was filed and the time a waiver decision was made. Her position would require an alien to remain eligible for § 212(c) indefinitely. Hypothetically, an alien could therefore escape from prison after serving 4 years and 11 months of a life sentence, which is less than 5 years, and then argue entitlement to consideration for a § 212(c) waiver when apprehended twenty years later. That is clearly not what Congress intended when it provided § 212(c) relief as an option for aliens facing removal. Accordingly, the delay in processing her removal following imposition of her sentence in 1992 does not entitle her to consideration under § 212(c).

DiPeppe's remaining claim focuses on the implicit time restrictions contemplated by the "unitary process" envisioned in the INS regulations and the delay between the OSC served on her in 1992 and the NTA served on her in 2000. DiPeppe argues that the INS improperly delayed

---

rational for the sentence that there was no agreement as to the sentence that was to be imposed pursuant to the plea. Thus, at least to the extent of the length of time that would be recommended, the plea was "open."

placing her case before an Immigration Judge in violation of its own regulations, but fails to point to any mandatory time frame under those regulations to support her claim. Although 8 U.S.C. § 1229(d)(1) mandates that the Attorney General begin removal proceedings as expeditiously as possible,[16] the clarification contained in § 1229(d)(2) fatally undermines her argument about the effect of that mandate. There, Congress declared: "Nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States or its agencies or officers or any other person." 8 U.S.C. § 1229(d)(2) We cannot adopt DiPeppe's due process argument without ignoring that directive.

The second prong of DiPeppe's procedural due process argument, challenging the delay between the OSC in 1992 and NTA in 2000, fails by operation of the INS regulations, which provide that removal proceedings commence with the filing of a charging document with the Immigration Court. *Compare* 8 C.F.R. § 242.1 (1992) ("[e]very proceeding to determine the deportability of an alien in the United States is commenced by the filing of an Order to Show Cause with the Office of Immigration Judge. . . .") with 8 C.F.R. § 239.1 (2000) ("[e]very removal proceeding conducted under section 240 of the Act to determine the deportability or inadmissibility of an alien is commenced by the filing of a notice to appear with the Immigration Court."). *See also, Upsango v. Ashcroft*, 289 F.3d 226, 229 (3d Cir. 2002). Therefore, removal proceedings were not initiated against DiPeppe until the NTA was filed with the Immigration Court in 2000.

We recognize that we have previously noted the possibility that removal proceedings may be viewed as commencing when an OSC is served upon the alien. *See*

---

16. 8 U.S.C. § 1229(d)(1) provides:

Prompt initiation of removal.

(1) In the case of an alien who is convicted of an offense which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction.

*Upsango*, 289 F.3d at 229; and *Pinho v. INS*, 249 F.3d 183, 185 (3d Cir. 2001). However, both "suggestions" were *dicta*. A close reading of *Upsango*, which was decided after *Pinho* readily discloses this. There, we declared, "We *hold* that the removal proceeding . . . did not commence when [the alien] filed his asylum petition . . . Instead that proceeding commenced in January 1998." 289 F.3d at 230. That was when the INS filed its NTA. Moreover, we clearly stated "INS regulations provide that removal proceedings commence with the filing of a notice to appear with the Immigration Court. Reg. §§ 3.14 and 239.1" *Id.* at 229. Moreover, in those cases we were deciding the retroactivity of the changes in immigration law. *See Pinho,* 249 F.3d at 187 (determining retroactive effect of stop-time provision implicated by IIRIRA); *Bury v. Reno*, 101 F.Supp. 2d 296, 299 (E.D.Pa. 2000) (noting issuance of OSC rather than filing is "the meaningful event for the purpose of determining whether a proceeding was subject to a newly enacted law"); *Canela v. United States DOJ,* 64 F.Supp. 2d 456, 458 (E.D. Pa. 1999) (examining retroactive effect of AEDPA on INS proceedings). Here, it is clear that proceedings were initiated against DiPeppe when the charging documents were filed with the Immigration Court.

Although DiPeppe was served with an OSC and Notice of Hearing in 1992, removal proceedings did not effectively commence for her until 2000, when the NTA was filed with the Immigration Court. *See Upsango,* 289 F.3d at 229. Therefore even though the delay between serving the OSC and filing the NTA is not to be condoned, the circumstances here do not implicate the Due Process Clause of the Fifth Amendment. DiPeppe was not actually in proceedings in 1992 because the OSC was not filed with the Immigration Judge until 2000.[17]

---

17. DiPeppe cites *Singh v. Reno*, 182 F.3d 504 (7th Cir. 1999) to support her claim that the delay constituted a due process violation. The facts and circumstances of *Singh* distinguish it from DiPeppe's case. In *Singh,* the court entertained the possibility of a constitutional claim by an alien claiming that the INS's failure to calendar a deportation hearing prevented him from applying for a discretionary waiver. 182 F.3d at 510. Rather than address the merits of Singh's claim, the court viewed it as the basis of a substantial constitutional claim entitling him to judicial

We also must reject DiPeppe's estoppel argument. She contends that the INS should be estopped from invoking the bar on waiver applications under INA § 212(c) for those who have served more than five years in prison. We agree that the doctrine of estoppel can apply to action of the government. *Yang v. INS*, 574 F.2d 171, 174-75 (3d Cir. 1978). However, in order for DiPeppe to succeed on her estoppel argument, she must prove (1) a misrepresentation by the government, (2) which she reasonably relied upon; (3) to her detriment and (4) affirmative misconduct. *US v. Asmar*, 827 F.2d 907, 912 (3d Cir. 1987); *Fredericks v. CIR*, 126 F.3d 433, 438 (3d Cir. 1997). DiPeppe can not establish any of these four elements.[18] Therefore her estoppel claim must also fail.[19]

---

review. *Id.* The court then allowed Singh to proceed with his due process claim before the Immigration Judge. *Id.* at 511. We decline to follow the Seventh Circuit in *Singh* because, as we explained in the text, an alien does not have a constitutional right for her removal hearing to commence at any certain time.

18. It is worth noting that the Supreme Court, in *INS v. Miranda* rejected a claim of affirmative misconduct involving the INS's "unreasonable delay" in processing a visa application. 459 U.S. 14 (1982). Eighteen months of inaction by the INS on a visa petition, which eventually effectively disqualified the petitioner from permanent resident status, did not amount to affirmative misconduct. *Id.* at 18.

19. The INS also contends that we are unable to review the discretionary decision of the Attorney General to commence proceedings, adjudicate cases or execute removal orders under INA § 242(g), 8 U.S.C. § 1252(g). *See Reno v. American-Arab Anti-Discrimination Committee*, 525 U.S. 471, 482 (1999); *M.B. v. Quarantillo*, 301 F.3d 109, 111 (3d Cir. 2002). Section 1252(g) provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

However, the INS's reliance on this argument is misplaced. In *DeSousa v. Reno*, 190 F.3d 175, 182-183 (3d Cir. 1999) we interpreted the Supreme Court's decision in *Arab American* as applying only to "suits challenging the government's selective enforcement of the immigration laws." Furthermore, § 242(g) does not eliminate habeas corpus jurisdiction. *Sandoval v. Reno*, 166 F.3d 225, 238 (3d Cir. 1999).

## V. CONCLUSION

For the reasons set forth above, we will reverse the District Court's judgment with sustaining DiPeppe's equal protection challenge to § 212(h), and we will affirm the district court's judgment in all other respects.

A True Copy:
      Teste:

*Clerk of the United States Court of Appeals
for the Third Circuit*