NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-2354
_____

CHRISTOPHER ANTHONY WILLIAMS,
                                        Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,
                                        Respondent
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A31-373-156)
Immigration Judge:  Honorable Walter A. Durling
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 11, 2012

Before:  SCIRICA, GREENAWAY, JR., and VAN ANTWERPEN, Circuit Judges

(Filed : January 17, 2012)

_____

OPINION OF THE COURT
_____

PER CURIAM.

        Petitioner Christopher Anthony Williams, proceeding pro se, seeks review of a

final order of removal.  For the reasons that follow, we will deny his petition for review.

I.

Williams, a native and citizen of Jamaica, was admitted to the United States as a lawful permanent resident at age 9 in 1970. In October 1993, Williams pled guilty in federal district court to one count of RICO conspiracy (18 U.S.C. § 1962(d)) and one count of conspiracy to distribute and possess with intent to distribute cocaine, cocaine base (crack) and heroin (21 U.S.C. § 846). He was sentenced to twenty years of imprisonment on the first count and twenty-five on the second, to be served concurrently. In 2007, the Department of Homeland Security ("DHS") charged him with removability under 8 U.S.C. § 1227(a)(2)(A)(iii) (convicted of aggravated felonies as defined by § 1101(a)(43)(B) (drug trafficking) and (U) (conspiracy)), § 1227(a)(2)(B)(i) (convicted of an offense relating to a controlled substance, other than than a single offense involving possession of 30 grams or less for personal use), and § 1227(a)(2)(B)(i) (convicted of a law relating to a controlled substance).

The Immigration Judge ("IJ") sustained the charges of removability at a hearing in July 2008, and continued proceedings so that Williams could submit an application for a certificate of citizenship (Form N-600). Williams claimed that he was eligible for derivative citizenship through his mother, who he believed had been born in Guantanamo Bay, Cuba. The United States Customs and Immigration Services ("USCIS") denied his application on October 9, 2008.[1] At a hearing on October 29, 2008, the IJ noted the

---

[1] The USCIS rejected Williams' claim for derivative citizenship after finding that his mother never became a naturalized citizen of the United States and that her birth in Guantanamo Bay, Cuba, did not render her a citizen. Williams also did not qualify for

USCIS' decision, denied Williams' motion arguing that the District Court lacked jurisdiction over his criminal conviction after modifying his sentence in 2004, and rejected his claim that his conviction was not final in light of the modification. Williams appealed the USCIS decision with a document purportedly issued by the Supreme Court of Judicature of Jamaica granting his father custody over him. The Administrative Appeals Office dismissed the appeal in February 2010, after finding that the decree was fraudulent. At an April 2010 hearing, Williams asked the IJ of a waiver of inadmissibility under 8 U.S.C. § 1182(c); the IJ stated he did not qualify for that relief because he had served a term of imprisonment of more than five years for an aggravated felony. Finally, on November 17, 2010, the IJ issued a removal order.

The Board of Immigration Appeals ("BIA") agreed, and dismissed Williams' appeal on May 6, 2011. Williams filed a timely notice of appeal.

II.

Because Williams has been convicted of an aggravated felony, a determination he does not challenge, our review of the denial of cancellation of removal is limited to constitutional claims or questions of law. See 8 U.S.C. § 1252(a)(2)(C) & (D); Pierre v. Att'y Gen., 528 F.3d 180, 184 (3d Cir. 2008) (en banc). We review the BIA's legal conclusions de novo. Kaplun v. Att'y Gen., 602 F.3d 260, 265 (3d Cir. 2010); Pierre, 528 F.3d at 184.

derivative citizenship through his father, who naturalized in 1977, because Williams failed to prove that his parents were legally separated and that his father had been granted legal custody of him prior to his eighteenth birthday.

III.

Williams first argues that the government is equitably estopped (and barred by laches) from bringing "new charges" in 2007 based on his 1993 conviction, after having previously brought charges in a 1999 Notice to Appear ("NTA") based on a 1990 conviction for marijuana possession.[2] He argues that the government was required to proceed with those charges and was precluded by the doctrines of estoppel and laches from commencing proceedings against him under the 2007 NTA. He also argues that the government misled him for over eight years into believing that he would have to defend against the charges alleged in the 1999 NTA. The Government insists that we lack jurisdiction over Williams' claims under 8 U.S.C. § 1252(g), which withdraws federal court jurisdiction over, inter alia, "decision[s] to commence proceedings." We have read that provision more narrowly, going so far as to apply the jurisdictional bar of § 1252(g) only to claims of selective enforcement. See DiPeppe v. Quarantillo, 337 F.3d 326, 335 n.19 (3d Cir. 2003); see also Garcia, 553 F.3d 724, 729 (3d Cir. 2009) (emphasizing the difference between challenging the discretionary decision to commence proceedings and the government's authority to do so); Park v. Att'y Gen., 472 F.3d 66, 73 (3d Cir. 2006) (adjudicating such a claim). Moreover, Williams' claim is, at least in part, a due process claim, which is within our jurisdiction. See § 1252(a)(2)(D).

The doctrine of equitable estoppel can apply to the government in the immigration context. To prevail, Williams would have to prove (1) a misrepresentation by the

---

[2] The government never served the 1999 NTA on the immigration court.

4

government; (2) which he reasonably relied upon; (3) to his detriment; and (4) affirmative misconduct by the government. See DiPeppe, 337 F.3d at 335. That the government chose not to pursue the 1999 charges, and instead filed a new NTA in 2007 based on his 1993 conviction is not "misrepresentation." See, e.g., Park, 472 F.3d at 73 (amending at NTA to add a new charge permissible, so long as the government does not employ intentional self-contradiction to obtain unfair advantage). The charges in the NTA were clear, and Williams was granted several hearing postponements and had ample time to prepare. Accordingly, Williams cannot meet the first element of his estoppel claim.

We do not appear to have addressed whether the defense of laches is available in a removal proceeding. But cf. INS v. Hibi, 414 U.S. 5, 8 (1973) ("As a general rule laches . . .on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest.") (quotations omitted). Even if we were to extend the defense in this context, Williams would fail to satisfy the elements: (1) lack of diligence by the government; and (2) resulting prejudice. See, e.g., Santana Prods., Inc. v. Bobrick Washroom Equip., Inc., 401 F.3d 123, 138 (3d Cir. 2005). The failure to commence proceedings earlier does not necessarily show a lack of diligence, because subsequent events (such as his incarceration) may have made removal unnecessary, inappropriate, or premature. Moreover, he cannot show prejudice, because he would not have received relief from removal due to his convictions. See Thom v. Ashcroft, 369 F.3d 158, 165-67 (2d Cir. 2004) (finding no merit to alien's laches argument where

alien's conviction occurred in 1982 and NTA was not issued until 1998).

Williams alleges that the government's delay in seeking removal resulted in the loss of witnesses and his right to relief under 8 U.S.C. § 1182(c) due to changes to the Immigration and Nationality Act ("INA"). First, Williams could have applied for a certificate of citizenship at any time, thereby preserving his witnesses, including in 1999 when he believed the government intended to seek his removal. Additionally, we have previously rejected a claim that an alien serving a long prison sentence was prejudiced by changes in the INA, as well as a claim that such delay violates due process.[3] See DiPeppe, 337 F.3d 333-34 (finding no merit to alien's estoppel and due process arguments where alien's conviction for aggravated manslaughter occurred in 1992 and NTA was not issued until 2000).

Williams next claims the IJ lacked jurisdiction to order his removal based on his 1993 conviction, which he claims is not yet final. In 2004, the District Court modified Williams' twenty-five year sentence on the second count to five years, to be run consecutively to the twenty-year sentence on count one. The modification had no practical impact on the length of time Williams must serve, nor did it have any effect on the substance or finality of his conviction. Accordingly, this claim is without merit.

Finally, Williams claims that he derived citizenship through his mother, who was born in Guantanamo Bay, Cuba. We retain jurisdiction to review the determination of

---

[3] We note that the delay did not hurt Williams' chances for relief under former 8 U.S.C. § 1182(c), as he was never eligible for relief under that provision, given that his sentence for his 1993 convictions surpassed five years. See, e.g., DiPeppe, 337 F.3d at 333.

whether Williams is an alien.  See § 1252(b)(5); Salim v. Ashcroft, 350 F.3d 307, 308 (3d Cir. 2003).  Williams bears the burden of proving by a preponderance of evidence that he derived citizenship through one or both of his parents.  See Bagot v. Ashcroft, 398 F.3d 252, 256 (3d Cir. 2005).  He states that his mother was born in Guantanamo Bay, Cuba, which he asserts is a sovereign territory of the United States, and was therefore a United States citizen.  The IJ rejected this claim and Williams' reliance on Boumediene v. Bush, 553 U.S. 723 (2008).  Williams did not prove that his mother was born on the United States military installation there, and even if he had, the Department of State's Foreign Affairs Manual provides that military installations are not part of the United States within the meaning of the Fourteenth Amendment.  The BIA and IJ agreed with the USCIS, reyling on Boumediene, 553 U.S. at 754-55, that Cuba retains de jure sovereignty over Guantanamo Bay.  Accordingly, Williams' mother was not a citizen by birth, nor did she ever become a naturalized citizen before her death.

Williams also claimed in his appeal to the BIA that he can derive citizenship through his father, who naturalized in 1977.  Former 8 U.S.C. § 1432(a)(3)[4] provided for derivative citizenship upon the naturalization of the parent with legal custody after a legal separation.  The BIA agreed with the IJ that Williams failed to establish that his parents

---

[4] The Administrative Appeals Office makes one mention, see A.R. 295, that Williams' mother died in 1977, but this appears to be a scrivener's error.  Williams (and the government) make repeated references to his mother's death in 1997.  The 1997 date also comports with Williams' argument that he was prejudiced by the government's delay because his mother died in the intervening years.  Accordingly, former § 1432(a)(2), which provided for derivative citizenship upon the naturalization of the surviving parent of a child under the age of eighteen, does not apply.

ever legally separated under a court decree and that his father was granted legal custody. The IJ relied on the USCIS's findings that the decree that Williams submitted was fraudulent, and the BIA agreed with the IJ's findings. Williams offered, and still offers, nothing to counter the IJ's analysis. Thus, Williams has not met his burden of proof that he was eligible for derivative citizenship.

IV.

For the foregoing reasons, we will deny the petition for review

8