**REVISED AUGUST 25, 2015**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

August 7, 2015

Lyle W. Cayce
Clerk

No. 14-60297

JERMAINE AMANI THOMAS, also known as Jermaine Thomas,

     Petitioner

v.

LORETTA LYNCH, U. S. ATTORNEY GENERAL,

     Respondent

Petition for Review of an Order of the
Board of Immigration Appeals

Before KING, SMITH, and ELROD, Circuit Judges.

KING, Circuit Judge:

Jermaine Amani Thomas petitions for review of an order that he be removed from the United States pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii). Thomas, who was born on a United States military base located in what is now Germany, argues that he is not removable because he is a United States citizen by virtue of the Fourteenth Amendment. For the following reasons, we DENY the petition for review.

No. 14-60297

## I.    BACKGROUND

Petitioner Jermaine Amani Thomas was born on August 9, 1986, in a military hospital located on a U.S. military base in Frankfurt, Germany. Thomas's father, a United States citizen, was a member of the United States military serving on the base.  Thomas's father first entered the United States in September 1977, enlisted in the United States Army in 1979, and became a United States citizen in May 1984.  Thomas's mother was a citizen of Kenya. Thomas was admitted to the United States as a lawful permanent resident in July 1989.  His visa form listed his nationality as Jamaican.

In 2013, the Department of Homeland Security issued Thomas a Notice to Appear and Additional Charges of Inadmissibility/Deportability.    The Additional Charges notice alleged that Thomas was a citizen of Jamaica and had three criminal convictions in the United States.  It also stated that Thomas was subject to deportation or removal pursuant to 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an aggravated felony; 8 U.S.C. § 1227(a)(2)(E)(i) because he had been convicted of a crime of domestic violence; and 8 U.S.C. § 1227(a)(2)(A)(ii) because he had been convicted of two or more crimes involving moral turpitude.

At a hearing before an Immigration Judge ("IJ") on December 12, 2013, Thomas conceded that, if he is not a United States citizen, he is removable based on his aggravated felony and domestic violence convictions.  The only relief sought by Thomas before the IJ was a declaration that he is a United States citizen and the termination of removal proceedings.  The IJ found that Thomas's birth in Germany gave rise to a rebuttable presumption of alienage. The IJ determined that based on the Department of State Foreign Affairs Manual (FAM), as well as the plain language of 8 U.S.C. § 1401(a) and the Constitution, the military base on which Thomas was born was not part of the United States for purposes of the Fourteenth Amendment.  Accordingly, the IJ

2

No. 14-60297

concluded that Thomas had failed to rebut the presumption of alienage. The IJ further found that Thomas was a citizen of Jamaica, and designated Jamaica as the country for removal. Finally, the IJ ordered Thomas removed pursuant to 8 U.S.C. § 1227(a)(2)(A)(ii) and (iii).

Thomas appealed the IJ's order to the Board of Immigration Appeals (the "BIA"). The BIA agreed with the IJ that Thomas's birth at the military hospital in Germany, to only one United States citizen parent, gave rise to a rebuttable presumption of alienage. The BIA rejected Thomas's claim that his birth on a military base in Germany rendered him a birthright citizen by virtue of the Fourteenth Amendment. Therefore, the BIA concluded that Thomas was removable and it dismissed the appeal. On April 22, 2014, Thomas filed a timely petition for review in this court.

## II.   STANDARD OF REVIEW

Generally, this court does not have jurisdiction to review a final order of removal entered against an alien who has been convicted of certain offenses, including aggravated felonies, or who has multiple convictions for crimes involving moral turpitude. 8 U.S.C. § 1252(a)(2)(C); *see Ogunfuye v. Holder*, 610 F.3d 303, 307 (5th Cir. 2010) (explaining that this court is stripped "of jurisdiction to review a final order of removal entered against an alien convicted of certain criminal offenses, including aggravated felonies"). However, in such cases, this court retains jurisdiction to review constitutional claims or questions of law. 8 U.S.C. § 1252(a)(2)(D); *see Marquez-Marquez v. Gonzales*, 455 F.3d 548, 560–61 (5th Cir. 2006). If a "petitioner claims to be a national of the United States and the court of appeals finds from the pleadings and affidavits that no genuine issue of material fact about the petitioner's nationality is presented, the court shall decide the nationality claim." 8 U.S.C. § 1252(b)(5)(A). Thomas's constitutional claim is afforded de novo review. *Danso v. Gonzales*, 489 F.3d 709, 712 (5th Cir. 2007).

## III.    DISCUSSION

This case requires us to determine whether a United States military base located within what is now Germany was "in the United States" for purposes of the Fourteenth Amendment.  The answer to this question is decisive because the Fourteenth Amendment grants birthright citizenship to "[a]ll persons born . . . in the United States, and subject to the jurisdiction thereof."  U.S. Const. amend. XIV, § 1; *see also Schneider v. Rusk*, 377 U.S. 163, 166 (1964) (explaining that "the rights of citizenship of the native born derive from § 1 of the Fourteenth Amendment").  If Thomas derived birthright citizenship from the Fourteenth Amendment, we must grant his petition for review because only aliens can be deported.  *See* 8 U.S.C. § 1227(a).  If he is in fact not a citizen, the petition for review must be denied because it is undisputed that he is otherwise deportable as an aggravated felon.  *See* 8 U.S.C. § 1227(a)(2)(A)(iii).  After a careful review of the decisions of the Supreme Court, other circuit courts of appeals, and our own court, we hold that Thomas is not a citizen, because the United States military base where he was born, which is located in modern-day Germany, was not "in the United States" for purposes of the Fourteenth Amendment.

"There are two sources of citizenship, and two only: birth and naturalization."  *Bustamante-Barrera v. Gonzales*, 447 F.3d 388, 394 (5th Cir. 2006) (internal quotation marks omitted).  "Within the former category, the Fourteenth Amendment of the Constitution guarantees that every person 'born in the United States, and subject to the jurisdiction thereof, becomes at once a citizen of the United States, and needs no naturalization.'"  *Miller v. Albright*, 523 U.S. 420, 423–24 (1998) (quoting *United States v. Wong Kim Ark*, 169 U.S. 649, 702 (1898)).  "Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress."  *Id.*  At the time of Thomas's birth, Congress extended birthright citizenship to children born abroad to one citizen

No. 14-60297

parent and one alien parent, as long as the citizen parent met certain physical-presence requirements. *See* 8 U.S.C. § 1401(g) (1982), *amended by* Pub. L. No. 99–653, § 12, 100 Stat. 3655, 3657 (Nov. 14, 1986). Thomas was born on a United States military base located within the territorial boundaries of modern-day Germany. His father was a naturalized United States citizen serving in the United States military and his mother was an alien. However, it is undisputed that Thomas was not a statutory birthright citizen because his father did not meet the physical presence requirement of the statute in force at the time of Thomas's birth.[1] *Id.* Consequently, Thomas must rely on the Fourteenth Amendment, which provides, in relevant part, that "[a]ll persons born . . . in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside," U.S. Const. amend. XIV, § 1, to sustain his claim that he is a birthright citizen. Thomas contends that the military base located in modern-day Germany where he was born was "in the United States" for purposes of the Fourteenth Amendment. We disagree.

We have not previously decided whether a military base located abroad qualifies as "in the United States" for Fourteenth Amendment purposes. However, we have addressed whether a person derived United States citizenship from his parents, who he claimed "became United States citizens at birth because they were born in the Philippines when the country was a

---

[1] The version of 8 U.S.C. § 1401(g) in effect at the time of Thomas's birth required his father to have at least ten years of physical presence in the United States for Thomas to acquire citizenship through that statutory vehicle. 8 U.S.C. § 1401(g) (1982); *see United States v. Duron-Caldera*, 737 F.3d 988, 990 n.1 (5th Cir. 2013) ("Derivative citizenship is determined under the law in effect at the time of the child's birth."). The statute counted time spent abroad in the military towards the ten year physical presence requirement. 8 U.S.C. § 1401(g) (1982). Congress amended the statute in 1986 to decrease the requisite U.S. presence or service, but only after Thomas's birth. *See* An Act to amend the Immigration and Nationality Act, and for other purposes, Pub. L. No. 99–653, § 12, 100 Stat. 3655, 3657 (Nov. 14, 1986).

United States territory." *Nolos v. Holder*, 611 F.3d 279, 282 (5th Cir. 2010) (per curiam). In that case, we were required to determine whether the Philippines was "in the United States" for Fourteenth Amendment purposes. *Id.* at 282. For guidance, we looked to the Second, Third and Ninth Circuits, which had previously "held that birth in the Philippines at a time when the country was a territory of the United States does not constitute birth 'in the United States' under the Citizenship Clause, and thus did not give rise to United States citizenship." *Id.* (citing *Lacap v. INS*, 138 F.3d 518, 518–19 (3d Cir. 1998); *Valmonte v. INS*, 136 F.3d 914, 915–21 (2d Cir. 1998); *Rabang v. INS*, 35 F.3d 1449, 1450–54 (9th Cir. 1994)).[2] Underlying those circuits' conclusion was the recognition that "the Citizenship Clause of the Fourteenth Amendment did not, without more, include United States territories simply because the territories were subject to the jurisdiction or within the dominion of the United States." *Id.* (internal quotation marks and brackets omitted).

"In reaching their holdings, the courts found guidance from the Supreme Court's *Insular Cases* jurisprudence on the territorial scope of the term 'the United States' as used in the Citizenship Clause of the Fourteenth Amendment." *Id.* (citing *Valmonte*, 136 F.3d at 918–19; *Rabang*, 35 F.3d at 1452).[3] In the *Insular Cases*, the Supreme Court "created the doctrine of

---

[2] In *Rabang*, Judge Pregerson dissented from the majority opinion. Judge Pregerson opined that the common law rule of dominion and the original intent of the authors of the Fourteenth Amendment led to the conclusion that persons born in the Philippines during the territorial period were born "in the United States" within the meaning of the Fourteenth Amendment. *Rabang*, 35 F.3d at 1454–66 (Pregerson, J., dissenting).

[3] The *Insular Cases* were a series of Supreme Court opinions that "addressed whether the Constitution, by its own force, applies in any territory that is not a State." *Boumediene v. Bush*, 553 U.S. 723, 756 (2008). "The 'Insular Cases,' which arose at the turn of the century, involved territories which had only recently been conquered or acquired by the United States." *Reid v. Covert*, 354 U.S. 1, 13 (1957). The Supreme Court ruled "that certain constitutional safeguards were not applicable to these territories since they had not been expressly or impliedly incorporated into the Union by Congress." *Id.* (internal quotation marks omitted).

incorporated and unincorporated Territories." *Examining Bd. of Eng'rs, Architects & Surveyors v. Flores de Otero*, 426 U.S. 572, 599 n.30 (1976). Incorporated Territories "encompassed those Territories destined for statehood from the time of acquisition, and the Constitution was applied to them with full force," while unincorporated Territories were not destined for statehood and only "fundamental constitutional rights were guaranteed to the inhabitants." *Id.* (internal quotation marks omitted). As relevant here, the Court's decision in *Downes v. Bidwell*, 182 U.S. 244 (1901), one of the *Insular Cases*, "was derived in part by analyzing the territorial scope of the Thirteenth and Fourteenth Amendments." *Valmonte*, 136 F.3d at 918. In *Downes*, the Court held that Puerto Rico was "not a part of the United States within the revenue clauses of the Constitution." *Downes*, 182 U.S. at 287. The Court noted that the Thirteenth Amendment prohibits slavery and involuntary servitude "within the United States, *or* any place subject to their jurisdiction." *Id.* at 251 (quoting U.S. Const. amend. XIII, § 1 (emphasis added)). The "disjunctive 'or' in the Thirteenth Amendment demonstrates that 'there may be places within the jurisdiction of the United States that are no[t] part of the Union' to which the Thirteenth Amendment would apply." *Valmonte*, 136 F.3d at 919 (quoting *Downes*, 182 U.S. at 251).

Conversely, the Fourteenth Amendment "is not extended to persons born in any place 'subject to [the United States'] jurisdiction.'" *Downes*, 182 U.S. at 251. Instead, citizenship under the Fourteenth Amendment is "limited to those born or naturalized in the states of the Union." *Nolos*, 611 F.3d at 283 (citing *Rabang*, 35 F.3d at 1452–53). In fact, the Citizenship Clause of the Fourteenth Amendment, like the Revenue Clause, "'has an express territorial limitation which prevents its extension to every place over which the government exercises its sovereignty.'" *Id.* (quoting *Rabang*, 35 F.3d at 1453). Therefore, we held that "'[i]t is . . . incorrect to extend citizenship to persons living in

7

No. 14-60297

United States territories simply because the territories are subject to the jurisdiction or within the dominion of the United States, because those persons are not born "in the United States" within the meaning of the Fourteenth Amendment.'" *Id.* at 283–84 (alteration in original) (internal quotation marks omitted) (quoting *Valmonte*, 126 F.3d at 920); *see also Rabang*, 35 F.3d at 1453; *Lacap*, 138 F.3d at 519.[4]  We are bound by our decision in *Nolos*.

Accordingly, regardless of whether the treaties applicable to the military base in which Thomas was born rendered it "subject to the jurisdiction or within the dominion of the United States," such a base was not "in the United States" for purposes of the Fourteenth Amendment.  *See id.* at 283–84 (internal quotation marks omitted) (citing *Valmonte*, 126 F.3d at 920; *Rabang*, 35 F.3d at 1453; *Lacap*, 138 F.3d at 519).[5]  Having already determined that the Philippines, which was "under the complete and absolute sovereignty and dominion of the United States" during its time as a United States territory, *The Diamond Rings*, 183 U.S. 176, 179 (1901), was not "in the United States" for Fourteenth Amendment purposes, we decline to hold that a military base located in Germany qualifies as such, *Nolos*, 611 F.3d at 284; *see also Friedrich v. Friedrich*, 983 F.2d 1396, 1401 (6th Cir. 1983) (explaining that a different military base in Germany "is not sovereign territory of the United States");

---

[4] The Supreme Court has previously assumed that persons born in the Philippines at the time the Philippines was a territory of the United States were not United States citizens. *See Rabang v. Boyd*, 353 U.S. 427, 432 n.12 (1957) ("The inhabitants of the islands acquired by the United States during the late war with Spain, not being citizens of the United States, do not possess the right of free entry into the United States." (internal citation and quotation marks omitted)).

[5] In an unpublished opinion, the Third Circuit considered a petitioner's argument that his mother was a United States citizen because she "was born in Guantanamo Bay, Cuba, which he asserts is a sovereign territory of the United States." *Williams v. Attorney General of the United States*, 458 F. App'x 148, 152 (3d Cir. 2012) (unpublished) (per curiam).  The *Williams* court noted that "the Department of State's Foreign Affairs Manual provides that military installations are not part of the United States within the meaning of the Fourteenth Amendment." *Id.*  Accordingly, it held that the petitioner's mother was not a citizen by birth. *Id.*

*Rabang*, 35 F.3d at 1452 ("In the *Insular Cases* the Supreme Court decided that the territorial scope of the phrase 'the United States' as used in the Constitution is limited to the states of the Union." (footnote omitted)).  As we held in *Nolos*, the Fourteenth Amendment's grant of birthright citizenship contains an express geographical limitation, which does not encompass the military base where Thomas was born.  Accordingly, because Thomas was not born "in the United States" for purposes of the Fourteenth Amendment, he is not a birthright citizen.[6]

Furthermore, scholars who have addressed the issue agree that "contrary to popular belief, birth in . . . United States military facilities, does not result in United States citizenship in the absence of another basis for citizenship."[7]  Sarah Helene Duggin & Mary Beth Collins, *'Natural Born' in the USA: The Striking Unfairness and Dangerous Ambiguity of the Constitution's Presidential Qualifications Clause and Why We Need to Fix It*, 85 B.U. L. Rev. 53, 103 (2005); *see also* Charles Gordon et al., *Immigration Law and Procedure* § 92.03(d) (rev. ed. 2010) ("The far-flung foreign interest and operations of the United States . . . may also raise questions concerning the status of children born in U.S. installations in foreign countries.  It seems quite clear that such installations cannot be regarded as part of the United States for purposes of the Fourteenth Amendment . . . ."); Allan Erbsen, *Constitutional*

---

[6] Even though, as we held in *Nolos*, the Fourteenth Amendment contains a territorial limitation, Congress may extend birthright citizenship to individuals born outside of the territorial United States.  *See Miller*, 523 U.S. at 424 ("Persons not born in the United States acquire citizenship by birth only as provided by Acts of Congress.").  Congress has provided for birthright citizenship for individuals born abroad to one United States citizen parent.  *See* 8 U.S.C. § 1401(g).  However, as explained above, Thomas did not qualify for the statutory grant of birthright citizenship applicable at the time of his birth.

[7] We acknowledge that some scholars have argued that the Fourteenth Amendment confers citizenship on certain individuals born outside the territorial United States.  *See, e.g.*, Lawrence Tribe and Theodore Olson, *The 'Natural Born Citizen' Memo*, (Mar. 19, 2008); Simeon E. Baldwin, *The Constitutional Questions Incident to the Acquisition and Government by the United States of Island Territory*, 12 Harv. L. Rev. 393, 406 (1899).

*Spaces*, 95 Minn. L. Rev. 1168, 1195 n.101 (2011) ("Few commentators have considered whether birth on a U.S. military base located within a foreign country would constitute birth 'in' the United States for purposes of the Fourteenth Amendment. The consensus is that such births would not confer automatic citizenship."). The commentary by these scholars supports our conclusion that the military base where Thomas was born was not "in the United States" for Fourteenth Amendment purposes.

Thomas cites the Supreme Court's decision in *United States v. Wong Kim Ark,* to support his position. There, the Supreme Court was asked to decide "whether a child born in the United States, of parents of Chinese descent . . . becomes at the time of his birth a citizen of the United States, by virtue of the first clause of the fourteenth amendment of the constitution." *Wong Kim Ark*, 169 U.S. at 653. However, *Wong Kim Ark* is inapposite. As we explained in *Nolos*, "the question of the territorial scope of the Citizenship Clause of the Fourteenth Amendment was not before the Court in *Wong Kim Ark*." *Nolos*, 611 F.3d at 284. This is because the fact that "the child was born in San Francisco was undisputed and it was therefore unnecessary to define 'territory' rigorously or decide whether 'territory' in its broader sense (i.e. outlying land subject to the jurisdiction of this country) meant 'in the United States' under the Citizenship Clause." *Id.* (internal quotation marks and brackets omitted). Accordingly, *Wong Kim Ark* does not support Thomas's contention that the military base on which he was born was "in the United States" for purposes of the Fourteenth Amendment.

Thomas likewise does not find support in the recent decision of the Court of Appeals for the District of Columbia Circuit in *Tuaua v. United States*, 788 F.3d 300 (D.C. Cir. 2015). In *Tuaua*, the D.C. Circuit was asked whether the Citizenship Clause of the Fourteenth Amendment affords birthright citizenship to individuals born in American Samoa. *Id.* at 301. In order to

answer this question, the D.C. Circuit considered at length "whether the circumstances are such that recognition of the right to birthright citizenship would prove 'impracticable and anomalous,' as applied to contemporary American Samoa." *Id.* at 309 (quoting *Reid*, 354 U.S. at 74 (Harlan, J., concurring)). Ultimately, the D.C. Circuit held that it was "anomalous to impose citizenship over the objections of the American Samoan people themselves, as expressed through their democratically elected representatives." *Id.* at 310. We are not convinced that *Reid* requires us to consider whether it would be "impracticable and anomalous" to recognize a right to birthright citizenship to those born on military bases located abroad. *Reid* was concerned with what "constitutional limitations apply to the Government when it acts outside the continental United States." 354 U.S. at 8. Here, we are not concerned with any of the Constitution's limitations on the federal or state governments; rather, we are concerned with the "territorial scope of the term 'in the United States' as used in the Citizenship Clause of the Fourteenth Amendment." *Nolos*, 611 F.3d at 282. "We note that the territorial scope of the phrase 'the United States' is a distinct inquiry from whether a constitutional provision should extend to a territory." *Rabang*, 35 F.3d at 1453 n.8 (citing *Downes*, 182 U.S. at 249). Given that we have already determined that "the Citizenship Clause has an express territorial limitation which prevents its extension to every place over which the government exercises its sovereignty," *Nolos*, 611 F.3d at 283 (internal quotation marks omitted), we decline to engage in a functional inquiry as to the scope of the Citizenship Clause. Therefore, *Tuaua* does not change our conclusion that Thomas was not born "in the United States" for Fourteenth Amendment purposes.[8]

---

[8] Thomas argues that if the Fourteenth Amendment does not provide him with birthright citizenship, he is effectively stateless. However, even if we were to assume that

No. 14-60297

## IV.    CONCLUSION

For the foregoing reasons, we DENY the petition for review.

---

he would be rendered stateless because he is not a United States citizen, we are not convinced that such a classification would change the analysis under the Fourteenth Amendment.

12